**LAW OFFICES OF STUART E. FAGAN**
STUART E. FAGAN, Cal. State Bar No. 152732
P.O. Box 365
Wheaton, Illinois 60187
Telephone: (858) 220-9601
Email: fairhousinglawyer@sbcglobal.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WILLIAM ROMAN; DESIREE ACOSTA; and D.R., N.R., J.R., A.R., and J.R., minors, by and through their general guardian, DESIREE ACOSTA; DIEGO SANDOVAL; RENEE SANDOVAL; A.G., a minor, by and through her general guardian, RENEE SANDOVAL; CATHERINE MICHELLE PEREZ; I.A. and S.A., minors, by and through their general guardian, CATHERINE MICHELLE PEREZ, <br><br>          Plaintiffs, <br><br>     v. <br><br> MSL CAPITAL, LLC, doing business as CASA BUENA CASA LYNNDA, and LI RITCHEY, <br><br>          Defendants. | No. 5:17-CV-02066-JGB-SP <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF THE ISSUES <br><br> Judge:     Jesus G. Bernal <br> Date:      November 5, 2018 <br> Time:      9 a.m. <br> Dept.:     1 <br><br> Discovery <br> Cut-Off:   November 5, 2018 <br> Pre-Trial <br> Conf.:     March 4, 2019 <br> Trial:     March 19, 2019 |

# **TABLE OF CONTENTS**

Table of Contents ............................................................................. i-iii

Table of Authorities ...................................................................... iv-viii

I.     Background ...................................................................... 1

II.    Statement of the Facts ..................................................... 3

III.   Points and Authorities .................................................... 9

       A.    Summary Judgment Standard ................................... 9

       B.    Casa Buena Casa Lynnda Apartments' Tenant Rules Treated
             Families with Children Differently from Households
             Comprised of Adults Only, As  Such, They Violated of 42
             U.S.C. §3604(b) ...................................................... 10

             1.    Defendants Enacted a Facially Discriminatory
                   Rule (the "Adult Supervision Rule") ............................ 11

             2.    The Adult Supervision Rule Treated Families
                   with Children Differently from Adults-Only
                   Households ........................................................ 12

             3.    Adult-Only Households were Free to Use the
                   Entire Premises of the Complex Without
                   Limitation and Without the Risk of Receiving
                   Warnings or Facing Eviction for Violating the
                   Adult Supervision Rule ...................................... 13

             4.    Since Plaintiffs have Established a *Prima Facie*
                   Violation, a Presumption of Discrimination
                   Arises ............................................................ 13

       C.    Statements Made by Defendants Indicated Preferences, Limitations, or
             Discrimination Based on Familial Status, As Such, Those Statements

Violated 42 U.S.C. §3604(c) as a Matter of Law ................................... 14

1.    Adult Supervision Rule ....................................................... 15

    A.    Defendants Published A Discriminatory

         Statement in its Tenant Rules .............................. 15

    B.    Defendants' Statement Placed a Limitation

         on Children's Usage of the Apartment's

         Premises ................................................................. 15

    C.    Defendants' Statement Violated §3604(c)

         as a Matter of Law ................................................ 16

2.    Oral Statements ................................................................... 17

    A.    Too Many Children Statement ............................ 18

    B.    Children Can't Play Outside Without Adult

         Supervision Statement .......................................... 18

    C.    Calling the Police on Crying Babies Statement ................. 18

    D.    Take Your Children to the Park Statement ......................... 18

D.    Defendants' Failure to Post a Fair Housing Poster at the

Buena Casa Lynnda Apartments Violated 24 C.F.R. § 110.30 ............... 19

1.    Defendants Are Subject to the Fair Housing Act, As

    Such, They Were Required to Post a Fair Housing

    Poster at Casa Buena Casa Lynnda ................................ 19

2.    Defendants Failed to Post a Fair Housing Poster at the

    Casa Buena Casa Lynnda Apartments ........................... 20

E.    Defendants Have Violated the Unfair Business Practices Act .............. 21

1.    The Unfair Business Practices Act, Among Other

    Things, Prohibits Unlawful Business Acts and Practices ........... 22

2.    Any Type of Business Practice That is Forbidden by

    Law is an "Unlawful" Business Activity ..................................... 22

3.   Defendants' Enactment of the Adult Supervision Rule was Forbidden by Law, As Such, Defendants Violated the Unfair Business Practices Act .................................................. 22

F.   Defendants Have Violated the Unruh Civil Rights Act .......................... 22

1.   The Unruh Civil Rights Act Must be Construed to Banish Arbitrary, Invidious Discrimination by Business Establishments ................................................. 22

2.   Rental Housing is a Business Establishment under the Unruh Civil Rights Act .................................... 23

3.   The Unruh Civil Rights Act Prohibits Discrimination on the Bases of Age and Familial Status in Rental Housing .............. 23

4.   Apartment Rules That Violate §3604 of the Fair Housing Act Can Also Violate the Unruh Civil Rights Act .......... 23

5.   Defendants' Adult Supervision Rule Violates the Fair Housing Act and the Unruh Civil Rights Act ................................ 23

IV.   Conclusion...................................................................................... 24

# **TABLE OF AUTHORITIES**

## **Cases**

*Anderson v. Foley*,

    1999 CAFEHC LEXIS 5 (1999)........................................................ 10

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (1986) .................................................................. 9

*Angelucci v. Century Supper Club*,

    41 Cal. 4th 160 (2007) .............................................................. 22

*Ave. 6E Investments, LLC v. City of Yuma*,

    818 F.3d 493 (9th Cir. 2016) ...................................................... 2

*Balvage v. Ryderwood Improvement*,

    642 F.3d 765 (9th Cir. 2011)....................................................... 1

*Bangerter v. Orem City, Utah*,

    46 F.3d 1491 (10th Cir. 1995)..................................................... 11

*Belcher v. Grand Reserve Mgm, LLC*,

    269 F. Supp. 3d 1219 (M.D. Ala. 2017) ......................................... 11

*Bischoff v. Brittain*,

    183 F.Supp.3d 1080 (E.D. Cal. 2016) ......................................... 12,13

*Blackington v. Quiogue Family Trust*,

    Case No. 11-CV-1670-W(WVG) (S.D. Cal. 4-13-2013)................................. 20

*Burks v. Poppy Construction Co.*,

    57 C.2d 463 (1962)................................................................. 23

*Brown v. Bartholomew Consol. School Corp.*,

    442 F.3d 588 (7th Cir. 2006) ..................................................... 12

*Brown v. Smith*,

    55 Cal.App.45th 767 (1997).......................................................... 10

*Celotex Corp. v. Catrett,*

    477 U.S. 317 (1986) ............................................. 9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*

    83 Cal.Rptr. 2d. 548 (1999) ................................. 21

*Committee Concerning Community v. Modesto,*

    583 F.3d 690 (9th Cir. 2009) ............................... 1

*Crue v. Aiken,*

    370 F.3d 668 (7th Cir. 2004) ............................. 12

*Eisenberg v. Ins. Co. of North America,*

    815 F.2d 1285 (9th Cir. 1987) ........................... 10

*Fair Housing Congress v. Weber,*

    993 F.Supp. 1286 (C.D. Cal. 1997)............... 14,15,17

*Farmers Ins. Exchange v. Superior Court,*

    2 Cal.4th 377 (1992)........................................... 21

*Glasby v. Mercy Hous., Inc.,*

    Case No. 17-cv-02153-DMR (N.D. Cal. Oct. 25, 2017) ..................... 22

*HUD v. Edlestein,*

    1991 WL 442784 (H.U.D. 1991) ...................... 12

*Hewlett v. Squaw Valley Ski Corp.,*

    54 Cal.App.4th 499 (1997)................................. 20

*Hubert v. Williams,*

    133 Cal.App.3d Supp. 1 (1982)......................... 23

*Iniestra v. Cliff Warren Investments,*

    886 F.Supp. 1161 (C.D. Cal. 7-31-2012) ............. 11,15,16,17

*Inland Mediation Board v. City of Pomona,*

    158 F.Supp.2d 1120 (C.D. Cal. 2001)................... 10

*Jancik v. HUD,*
    44 F.3d 553 (7th Cir. 1995) .................................................................. 15

*Johnson v. Macy,*
    145 F.Supp.3d 907 (C.D. Cal. 2015) .................................................. 15

*Lakeside Resort Enters., LP v. Bd. of Supervisors of Palmyra Twp.,*
    455 F.3d 154 (3d Cir. 2006) ................................................................. 1

*Llanos v. Estate of Anthony Coehlo,*
    24 F.Supp.2d 1052 (E.D. Cal. 1998)........................................... 12,14,15

*Mathews v. Arrow Wood LLC,*
    Case No. EDCV-07-1316-SGL, 2009 WL 8659593 (C.D. Cal. 2009) ...... 13,15,17

*Marina Point, Ltd. v. Wolfson*,
    640 P.2d 115 (Cal. 1982) ................................................................... 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................... 10

*Munson v. Del Taco*,
    46 Cal. 4th 661 (2009) ....................................................................... 22

*Na'im v. Sophie's Arms Fine Residences,*
    Case No. 13-cv-2515-JAH (BLM) (S.D. Cal. 1-8-2015) ..................... 20

*Nissan Fire & Marine Ins.Co. v. Fritz Cos.,*
    210 F.3d 1099 (9th Cir. 2000) ............................................................. 9

*Pack v. Fort Washington II,*
    689 F.Supp.2d 1237 (E.D. Cal. 2009)............................ 14,15,16, 23,24

*Podolsky v. First Healthcare Corp.*,
    50 Cal. App. 4th 632 (1996)............................................................... 21

*Powell v. McCormack*,
    395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) ................. 12

*Ragin v. New York Times Co.*,

923 F.2d 995 (2d Cir.), cert. denied, 502 U.S. 821 (1991) ............................ 14,15

*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,*

    135 S.Ct. 2507 (2015) ............................................................. 1

*Trafficante v. Metropolitan Life Ins. Co.,*

    409 U.S. 205 (1972)................................................................ 1

*U.S. v. Hunter,*

    459 F.2d 205, 215 (4th Cir.), cert. denied, 409 U.S. 934 (1972) ....................... 14

*Walker v. Countrywide Home Loans, Inc.,*

    98 Cal.App.4th 1158 (Cal.App. 2002) .................................................. 21

*Wernsing v. Thompson,*

    423 F.3d 732 (7th Cir. 2005) ........................................................ 12

*Zhou v. Villa de Paz Apartments, LLC,*

    Case No. 2:17-cv-03795-MHB, *7, (D. Ariz. 9-25-2018) ................................ 16

### *Federal Statutes*

42 U.S.C. §3601............................................................................ 2,19

42 U.S.C. §3604(a)......................................................................... 2

42 U.S.C. §3604(b)........................................................ 10,11,13,14,16,17,23,24

42 U.S.C. §3604(c)........................................................ 14,16,17,18,19,23,24

42 U.S.C. §3608(a) ...................................................................... 19

### *State Statutes*

Cal. Business & Professions Code §17200 ............................................... 20,21

Cal. Civil Code §51 ..................................................................... 22,23

Cal. Civil Code §51.2 ................................................................... 22,23

Cal. Gov. Code §12955 ................................................................... 10

### *Code of Federal Regulations*

24 C.F.R. Ch. 1, Subch. A., App. I at 691 (1991)........................................ 2

24 C.F.R. § 110.30 ..................................................................... 19,20

### ***Congressional Record***

H. Rep. No. 711, 100th Cong., 2d Sess (1988)............................................................... 1

### ***Treatises***

*Housing Discrimination, Law and Litigation*, R. Schwemm ..................................... 1

# I.

## __BACKGROUND__

The Fair Housing Act was enacted in 1968 "to eradicate discriminatory practices within a sector of our Nation's economy."[1]  In 1988, Congress amended the Fair Housing Act to prohibit discrimination against families with children.[2]  Congress took this step based on a series of studies demonstrating that discrimination against American families was a widespread and growing phenomenon.[3]  From these studies powerful evidence emerged indicating that restrictive practices were forcing American families to live in less desirable dwellings.[4]

The Fair Housing Act "broadly prohibits discrimination against families with children in connection with the sale and rental of housing"[5] and it reaches "post-acquisition" claims.[6]  The Fair Housing Act implements the Congressional policy favoring the achievement of integrated living patterns.[7]  The Supreme Court has held that when construing the Fair Housing Act, courts "are to give a 'generous construction' to the statute's 'broad and inclusive' language."[8]  For as the Ninth Circuit recently noted, "The

---

[1]*Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.,* 135 S.Ct. 2507, 2521 (2015).

[2]The Fair Housing Act of 1988, as amended, went into effect on March 12, 1989.

[3]H. Rep. No. 711, 100th Cong., 2d Sess., 19-21 (1988) (hereinafter "House Report"); R. Schwemm, *Housing Discrimination* §11E:1 (1991).

[4]House Report at 21; R. Schwemm at 11-66.  134 Cong. Rec. H4688 (June 23, 1988) (remarks of Rep. Dellums).

[5]*Balvage v. Ryderwood Improvement*, 642 F.3d 765, 769 (9th Cir. 2011).

[6]*Committee Concerning Community v. Modesto*, 583 F.3d 690, 713 (9th Cir. 2009).

[7]*Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211, 93 S.Ct. 364, 367 (1972).

[8]*Lakeside Resort Enters., LP v. Bd. of Supervisors of Palmyra Twp.,* 455 F.3d 154, 156 (3d Cir. 2006) (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S.

Fair Housing Act (FHA) is one of the most important pieces of legislation to be enacted by the Congress in the past 60 years."[9]

The regulations issued by the Department of Housing and Urban Development implementing the 1988 amendments to the Fair Housing Act make clear that Congress intended to give families with children the same protections that had been provided since the Act's adoption in 1968 to individuals on the basis of race, sex, national origin, and religion:

> [T]he legislative history of the Fair Housing Act and the development of fair housing law . . . support the position that . . . families with children must be provided the same protections as other classes of persons. . . . For example, "dual housing" facilities segregated by race, color or religion clearly would violate the . . . Act.  Similarly, . . . it is unlawful for a housing facility to segregate because of familial status.[10]

This conclusion is fully consistent with the statutory language of the 1988 amendments, which expressly incorporates families with children as a protected class in each and every substantive provision where the other traditional protected classes appear.[11]  This court has ample guidance in applying the Fair Housing Act in this case. 50 years of litigation under the Fair Housing Act involving traditional protected groups and 30 years of litigation involving the protection of families with children have generated extensive case law–cited below–governing the legal questions at issue here.

---

205, 209 (1972)).

[9] *Ave. 6E Investments, LLC v. City of Yuma,* 818 F.3d 493, 496 (9th Cir. 2016).

[10] 24 C.F.R. Ch. 1, Subch. A., App. I at 691 (1991); *see also id.* at 714.

[11] *See, e.g.,* 42 U.S.C. §§3604(a)-(e).  Hereinafter, unless otherwise noted, all references are to 42 U.S.C. §3601 *et seq.*

In a nutshell, shortly after Defendants MSL Capital, LLC, and Li Ritchey (MSL's managing member) acquired the Casa Buena Casa Lynnda Apartments and took over management of the complex, they immediately began discriminating against families with children. Before long, they served three notices to terminate the tenancies of the three families who have brought this action.

## II.

## STATEMENT OF THE FACTS

Casa Buena Casa Lynnda Apartments is a small apartment complex consisting of 28 units in Moreno Valley, California.[12] Most of the Plaintiffs had lived at the complex for a long time and before Defendant MSL Capital, LLC, acquired the complex in October 2016.[13] To wit, Plaintiff Renee Sandoval moved into the complex in 2000 when she was just 16 years old.[14] Six years later, in 2006, she gave birth to her daughter, A.G., who resided with her throughout the remainder of her tenancy.[15] In March 2012, Plaintiff Catherine Michelle Perez moved into the apartment complex.[16] Her two children, I.A. and S.A., were born in 2013 and 2014.[17] Both of Ms. Perez's children continuously lived with her at the Casa Buena Casa Lynnda Apartments.[18] In November 2012, Plaintiffs William Roman and Desiree Acosta moved into the apartment complex with three of their children.[19] They had two more children before Defendants acquired the complex.

---

[12]Statement of Undisputed Facts ("SUF") No. 1.

[13]SUF No. 2.

[14]SUF No. 3.

[15]SUF Nos. 4 and 5.

[16]SUF No. 6.

[17]SUF No. 7.

[18]SUF No. 8.

[19]SUF Nos. 9 and 10.

Defendant MSL Capital, LLC, is a single-asset entity that owns Casa Buena Casa Lynnda Apartments.[20]  MSL Capital, LLC, has no employees.[21]  Defendant Li Ritchey manages the LLC.[22]  Defendant Li Ritchey was the property manager of the Casa Buena Casa Lynnda Apartments from October 13, 2016, through January 3, 2018.[23]

Shortly after Defendant MSL Capital, LLC, acquired the Casa Buena Casa Lynnda Apartments, on or about October 13, 2016, Defendant Li Ritchey notified the tenants that Defendants had become the new property manager of the complex.[24]  On October 24, 2016, Defendants terminated Plaintiff Renee Sandoval's employment as the onsite manager.[25]  Later that day, Defendant Li Ritchey personally posted a written notice on all the tenants' doors informing them that she was "the only person authorized to manage the properties at Casa Buena and Casa Lynnda."[26]

After MSL Capital, LLC, acquired the Casa Buena Casa Lynnda Apartments, all of the tenants were required to sign a new lease.[27]  The new leases contained the new Tenant Rules and Regulations.[28]  The Tenant Rules and Regulations contained, among other things, the following rule:

> **"Supervision: All children under age 14 must be supervised by adults 18 years or older while on the premises. Residents who fail to supervise their children are subject to eviction.  Premises include, but are not limited to common**

---

[20]SUF Nos. 11 and 12.
[21]SUF No. 13.
[22]SUF No. 14.
[23]SUF No. 15.
[24]SUF No. 16.
[25]SUF No. 17.
[26]SUF Nos. 18 and 19.
[27]SUF No. 20.
[28]SUF No. 21.

**areas, grounds, etc."**[29] (Hereinafter, the "Adult Supervision Rule").

One of the Plaintiffs, Renee Sandoval, is the former onsite manager of the complex, and she had extensive dealings with Ms. Ritchey during the ownership transition period.[30]  In or around October 2016, Ms. Ritchey was having a conversation with Renee Sandoval when she saw Plaintiff Desiree Acosta walking to her car with her five children.[31]  "Oh, my God, are all those her children?  Is she married?"  Ms. Ritchey asked Ms. Sandoval before stating, "She has too many kids.  She can't live here.  I want to evict her."[32]  Ms. Sandoval told her that that was illegal.[33]  Ms. Ritchey responded, "No, we have a family lawyer that will take care of it.  It is not a problem."[34]

Casa Buena Casa Lynnda was the first apartment complex that Ms. Ritchey had ever managed.[35]  Despite her lack of experience, Ms. Ritchey decided draw up the lease and included the Adult Supervision Rule therein.[36]  Despite her own rule, Ms. Ritchey still forbid children from playing in the common areas even when they had direct adult supervision.  In or around October 2016, Ms. Ritchey told Ms. Sandoval's then nine-year-old daughter, A.G., whom she found playing in the common areas, "You need to have your mom outside to play."[37]  "There she is, right there," replied A.G.[38]  Ms. Ritchey turned around and saw Ms. Sandoval standing there keeping a watch on her

---

[29]SUF No. 22.
[30]SUF Nos. 23 and 24.
[31]SUF Nos. 25 and 26.
[32]SUF Nos. 27 and 28.
[33]SUF No. 29.
[34]SUF No. 30.
[35]SUF No. 31.
[36]SUF Nos. 32 and 33.
[37]SUF No. 35.
[38]SUF No. 36.

daughter.[39]  "Oh," said Ms. Ritchey, "that's your mom?" is all that Ms. Ritchey could

muster.[40]  In short, Ms. Ritchey had failed to realize that A.G. was Ms. Sandoval's

daughter.  After several encounters with Ms. Ritchey, A.G. grew so petrified of Ms.

Ritchey that she no longer desired to go outside to play whenever Ms. Ritchey was

around.[41]  Moreover, on or about January 18, 2017, Ms. Ritchey told Plaintiff William

Roman, who was supervising his children while they were playing, that his children were

not allowed to play outside and if he wanted his children to play outside, then he needed

to take them to the park and, if he didn't, then his family would be evicted.[42]

    Ms. Ritchey is a long-time CPA who has served as the controller for a few

businesses.[43]  Ms. Ritchey purportedly serves 60-Day Notices to Terminate Tenancies for

one reason alone: "economic reasons."[44]  Ms. Ritchey testified that she served two of the

60-Day Notices to Terminate Tenancy on the Plaintiffs Catherine Michelle Perez,

William Roman, and Desiree Acosta because it was the most profitable thing she could

do.[45]  She made the incredulous claim that Plaintiff Renee Sandoval asked to have her 60-

Day Notice to Terminate her tenancy served on her during the holidays![46]

    Defendants have admitted in discovery responses that only families with children

have been forced out for other than non-payment of rent.[47] Plaintiffs, not coincidentally,

---

[39]SUF No. 37.

[40]SUF No. 38.

[41]SUF No. 39.

[42]SUF Nos. 40-44.

[43]SUF Nos. 45 and 46.

[44]SUF No. 47.

[45]SUF Nos. 48-51.

[46]SUF No. 52.

[47]Defendant MSL Capital's Response to Plaintiffs' Interrogatory No. 6.
Defendant's response is lodged herewith.

all had young children living with them at the complex when they were forced out.[48]

After forcing out all three families (and their young children), she raised the rents on the apartments.[49]  When asked if she ever offered the apartments to the Plaintiffs at the higher rent, Ms. Ritchey replied, "I didn't know that I had to."[50]  Put simply, Ms. Ritchey ostensibly got rid of Plaintiffs and their young children as soon as possible so that she could make more money by renting out quiet apartments.

The timing of Ms. Ritchey's actions, however, fail to buttress her claim that she made the decision to evict the Plaintiffs solely for economic reasons.  For example, Ms. Ritchey served the 60-Day Notice to Terminate the Tenancy of William Roman and Desiree Acosta two days after they had objected to Ms. Ritchey's demand that they take their five children inside.[51]  The children had been playing in the common area of the complex while their dad was supervising them.[52]  Mr. Roman voiced his opposition to Ms. Ritchey's demand.[53]  Rather than engage in meaningful discussion with Mr. Roman and Ms. Acosta, Ms. Ritchey again displayed her callousness and served upon them a 60-Day Notice to Terminate the Tenancy.  And when Mr. Roman and Ms. Acosta consulted with a fair housing attorney and subsequently sent a letter to her regarding her illegal activity, Ms. Ritchey changed a rule, but refused to retract the eviction notice.[54]

Next, Ms. Ritchey served the 60-Day Notice to Terminate the tenancy of Diego Sandoval and Renee Sandoval *immediately* after she had had Ms. Sandoval complete the

---

[48]Defendants have admitted in discovery responses that only families with children have been forced out for other than non-payment of rent.  SUF No. 53.

[49]SUF No. 54.

[50]SUF No. 55.

[51]SUF Nos. 40-44.

[52]Ibid.

[53]Ibid.

[54]SUF No. 56.

new Lease Agreement.[55] Earlier in the day, Ms. Ritchey had informed Ms. Sandoval that her services as the onsite manager would no longer be needed.[56] What is more, the termination of Ms. Sandoval's employment and her family's tenancy occurred shortly after Ms. Sandoval objected to Ms. Ritchey's illegal tendencies.

To wit, in addition to objecting to Ms. Ritchey's desire to terminate Ms. Acosta's tenancy because she had too many children, Ms. Ritchey instructed Ms. Sandoval to call the police if she heard a tenant's baby cry.[57] Ms. Ritchey, put simply, wanted a quiet place at all cost.

Ms. Ritchey, moreover, did not want any children riding bicycles, so on the day that she terminated Ms. Sandoval's employment and tenancy, she served a notice on all the tenants that informed them, among other things, that bicycles could not be stored in front of their apartments.[58]

Finally, Ms. Ritchey failed to post a fair housing poster at the apartment complex.[59] 24 C.F.R. §110.10(a) mandates that apartment complexes post and maintain fair housing posters. When presented with a fair housing poster at her deposition, Ms. Ritchey testified that she had never seen such a poster and did not recall having posted one at the complex.[60] Now that they have been forced out, Defendants have posted a banner on the front of the complex that advertises it as a "quiet" complex.[61]

---

[55]SUF No. 57.

[56] SUF No. 58.

[57]SUF No. 59.

[58]SUF No. 60.

[59]SUF No. 61.

[60]SUF No. 61.  Ritchey subsequently corrected her deposition to state that she had seen a fair housing poster before.  Ritchey did not otherwise change her testimony.

[61]SUF No. 62.

# III.

## POINTS AND AUTHORITIES

**A.    SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[62] The moving party must produce sufficient evidence to persuade the court that there is no genuine issue of material fact.[63]  Conversely, to defeat a motion for summary judgment, the nonmoving party must show that there are genuine issues of material fact.[64]  A material fact is one that might affect the outcome of the suit under the governing law, and a factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[65]

The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact.[66]  If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production under Rule 56(b) by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."[67]

---

[62]Fed. R. Civ. P. 56(c).

[63]*Nissan Fire & Marine Ins.Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000).

[64]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[65]*Anderson*, 477 U.S. at 248 (1986).

[66]*See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

[67]*Nissan Fire,* 210 F.3d at 1105-06 (9th Cir. 2000).

When the moving party has carried its burden under Rule 56(a), the nonmoving party must produce evidence to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts."[68]  Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial.[69]  The nonmoving party's evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to the nonmoving party.[70]  If the nonmoving party produces direct evidence of a genuine issue of material fact, the motion for summary judgment is denied.[71]

## B.   CASA BUENA CASA LYNNDA APARTMENTS' TENANT RULES AND REGULATIONS TREATED FAMILIES WITH CHILDREN DIFFERENTLY FROM HOUSEHOLDS COMPRISED OF ADULTS ONLY, AS SUCH, THEY VIOLATED 42 U.S.C. §3604(b)

The first provision of the Fair Housing Act which Defendants violated is §3604(b),[72] which makes it unlawful:

---

[68]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[69]*Id.*

[70]*Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

[71]*Id.*

[72]California's Fair Employment and Housing Act ("FEHA"), which is codified at Cal. Gov. Code §12955 et seq., is substantially equivalent to the Fair Housing Act.  *Anderson v. Foley*, 1999 CAFEHC LEXIS 5, 25-26 (1999).  As such, only the Fair Housing Act will be addressed herein.  In short, if Defendants' actions violate the federal Fair Housing Act, then, by definition, they also violate California's FEHA.  "FEHA in the housing area is thus intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination."  *Brown v. Smith,* 55 Cal.App.45h 767, 780 (1997); *cf., Inland Mediation Board v. City of Pomona*, 158 F.Supp.2d 1120, 1150 (C.D. Cal. 2001) ("Generally, California explicitly prohibits its fair housing laws from being construed to provide fewer rights or remedies than the FHA and its implementing

"To discriminate against any person in the terms, conditions, or
privileges of sale or rental of a dwelling, or in the provision of
services or facilities in connection therewith, because of . . .
familial status . . ."

A plaintiff can establish a prima facie violation of §3604(b) by "establishing the existence of facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households."[73]

## 1. Defendants Enacted a Facially Discriminatory Rule (the "Adult Supervision Rule")

Herein, Defendants enacted the Adult Supervision Rule, which declared:

"All children under age 14 must be supervised by an adults
[*sic*] 18 years or older while on the premises.  Residents who
fail to supervise their children are subject to eviction."[74]

---

regulations.").

[73]*Iniestra v. Cliff Warren Invs., Inc.*, 886 F.Supp.2d 1161, 1166 (C.D. Cal. 2012); *Belcher v. Grand Reserve Mgm, LLC*, 269 F. Supp. 3d 1219, 1234 (M.D. Ala. 2017) (facially discriminatory actions are a type of intentional discrimination or disparate treatment); *Bangerter v. Orem City, Utah*, 46 F.3d 1491, 1500-01 (10th Cir. 1995) (prima facie case of intentional discrimination under the Fair Housing Act is made merely by showing that a protected group has been subjected to discriminatory treatment).

[74]SUF No. 22.  The Adult Supervision Rule remained in effect the entire time that Plaintiffs Catherine Michelle Perez and her family and Plaintiffs Diego Sandoval and Renee Sandoval and their family resided at the complex.  After Defendants served the lease termination notice on Plaintiffs William Roman and Desiree Acosta and their family, they complained about the Adult Supervision Rule, and Defendants removed the provision from the rules.  Defendants, however, did not revoke the lease termination notice that they had served upon Plaintiffs William Roman and Desiree Acosta.  While the removal of the Adult Supervision Rule from the Tenant Rules eliminates the need for injunctive relief, the removal of the Adult Supervision Rule does not terminate Plaintiffs' claims for declaratory

1
2

### 2.    The Adult Supervision Rule Treated Families with Children Differently from Adults-Only Households

3    Simply stated, the Adult Supervision Rule was a facially discriminatory rule that

4    treated children, and thus families with children, differently and less favorably from

5    adult-only households.  For the Adult Supervision Rule only applied to children; similar

6    restrictions were not placed on adult-only households' use of the facilities.  If one

7    substituted a different protected class (e.g., Muslims for children), then the

8    discrimination becomes readily apparent (e.g., "Muslims must be supervised by an adults

9    [*sic*] 18 years of older while on the premises.").  While there is a natural inclination to

10   protect children, "'safety judgments are for informed parents to make, not landlords.'"[75]

11   In *Bischoff v. Brittain,* 183 F.Supp.3d 1080, 1089 (E.D. Cal. 2016), the court found a

12   similar rule to Defendants' Adult Supervision Rule to be facially discriminatory.  The

13   court stated:

14   "The policy also treats parents of young children differently by

15   subjecting them to certain consequences if their children are

16   found unsupervised. In contrast to households with children,

17   _____

18   relief and monetary damages resulting therefrom.  As the Seventh Circuit noted,

19   "In an action seeking only injunctive relief, this requirement ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be

20   dismissed as moot. See, e.g., *Wernsing v. Thompson*, 423 F.3d 732, 744-45 (7th Cir. 2005). If, however, a plaintiff also seeks monetary damages, his case is not

21   moot even if the underlying misconduct that caused the injury has ceased. *See*

22   *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (holding that, although injunctive relief was moot, a case or controversy still

23   existed because the plaintiff requested declaratory relief and damages); *Crue v.*

24   *Aiken*, 370 F.3d 668, 677-78 (7th Cir. 2004) ('When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a

25   damages award can survive.')." *Brown v. Bartholomew Consol. School Corp.*, 442

26   F.3d 588, 596 (7th Cir. 2006).

27   [75]*Llanos v. Coehlo*, 24 F.Supp.2d 1052, 1060 (E.D. Cal. 1998), citing *HUD*

28   *v. Edlestein*, 1991 WL 442784, at *4 (H.U.D. 1991).

-12-

adult-only households may use the entire premises of the
complex without limitation and without the risk of receiving
warnings or facing eviction for violating the adult supervision
guidelines."

The *Bischoff* court went on to find that plaintiff had established a prima facie case
of facial discrimination because families with children were subjected to explicitly
differential treatment.[76]

### 3.   Adult-Only Households were Free to Use the Entire Premises of the Complex Without Limitation and Without the Risk of Receiving Warnings or Facing Eviction for Violating the Adult Supervision Rule

Similar to the rule in *Bischoff*, Defendants' Adult Supervision Rule threatened
eviction for offending families with children.  Adult-only households, by contrast, were
free to use the entire premises of the complex without limitation and without the risk of
facing eviction for violating the Adult Supervision Rule.  All things considered,
Plaintiffs have made out a *prima facie* case of a violation of §3604(b) of the Fair
Housing Act.

### 4.   Since Plaintiffs have Established a *Prima Facie* Violation, a Presumption of Discrimination Arises

Once a *prima facie* violation has been established, then a presumption of
discrimination arises.[77]  The presumption of discrimination only can be rebutted by
defendant articulating a non-discriminatory explanation for the restriction that
"establish[es] that their rules constitute a compelling business necessity and that they
have used the least restrictive means to achieve that end."[78]

---

[76]*Bischoff*, 183 F. Supp.3d at 1089.

[77]*Harris*, 183 F.3d at 1051.

[78]*Mathews v. Arrow Wood LLC*, Case No. EDCV-07-1316-SGL (?x), at
*9-10 (C.D. Cal. Apr. 2, 2009) (citations omitted).

In the final analysis, the evidence shows there is no genuine issue as to any material fact and Plaintiffs are entitled to judgment as a matter of law for the Adult Supervision Rule violates §3604(b).[79]

## C.   STATEMENTS MADE BY DEFENDANTS INDICATED PREFERENCES, LIMITATIONS, OR DISCRIMINATION BASED ON FAMILIAL STATUS, AS SUCH, THOSE STATEMENTS VIOLATED 42 U.S.C. §3604(c) AS A MATTER OF LAW

In addition to violating §3604(b) of the Fair Housing Act, the undisputed facts herein also show that Defendants are liable for several violations of §3604(c), which makes it unlawful:

> "To make, print, or publish, or cause to be made, printed, or
> published any notice, statement, or advertisement, with respect
> to the sale or rental of a dwelling that indicates any preference,
> limitation, or discrimination based on . . . familial status, . . . or
> an intention to make any such preference, limitation, or
> discrimination."

The standard for determining whether a given statement violates §3604(c) is whether the statement suggests a preference, limitation, or discrimination to the ordinary reader or listener.[80]  The ordinary reader or listener "is neither the most suspicious nor

---

[79]The Adult Supervision Rule, as will be shown below, also violates §3604(c).

[80]*U.S. v. Hunter,* 459 F.2d 205, 215 (4th Cir.), cert. denied, 409 U.S. 934, 34 L. Ed. 2d 189, 93 S. Ct. 235 (1972), *Ragin v. New York Times Co.,* 923 F.2d 995, 999-1000 (2d Cir.), cert. denied, 502 U.S. 821, 116 L. Ed. 2d 54, 112 S. Ct. 81 (1991); *Fair Housing Congress v. Weber,* 993 F.Supp. 1288, 1290 (C.D. Cal. 1997) (summary judgment granted as to discriminatory statements in rules and regulations); *Llanos v. Estate of Coehlo,* 24 F.Supp.2d 1052, 1061-62 (E.D. Cal. 1998) (holding rule restricting children under 18 from using adult pools was "overly broad, 'paternalistic,' and unduly restrictive"); *Pack v. Fort Washington*

the most insensitive of our citizenry."[81]  **No discriminatory intent is required.**[82]

1.     **Adult Supervision Rule**

A.     **Defendants Published A Discriminatory Statement in its Tenant Rules**

Defendants published in its Tenant Rules the Adult Supervision Rule, which was a rule that indicated a limitation on children's use of the premises.  To wit, the Adult Supervision Rule stated:

> **"All children under age 14 must be supervised by an adults**
> **[*sic*] 18 years or older while on the premises.  Residents who**
> **fail to supervise their children are subject to eviction."**[83]

B.     **Defendants' Statement Placed a Limitation on Children's Usage of the Apartment's Premises**

In *Fair Housing Congress v. Weber*, 993 F.Supp. 1286 (C.D. Cal. 1997) the court

---

*II,* 689 F.Supp.2d 1237, 1245 (E.D. Cal. 2009) (holding that apartment rules prohibiting children under 18 from using the community clubhouse without an adult and requiring children under 14 to be supervised by a parent or legal guardian to use the swimming pool are discriminatory on the basis of "familial status"); *Mathews v. Arrow Wood LLC,* Case No. EDCV-07-1316-SGL (C.D. Cal. 2009), Loislaw Federal District Court Opinions, at *7 (summary judgment granted as to discriminatory statements in rules and regulations); *Iniestra v. Cliff Warren Investments*, 886 F.Supp.2d 1161, 1168-1169 (C.D. Cal. 7-31-2012) (partial summary judgment granted as to discriminatory statements in rules and regulations).

[81]*Jancik v. HUD*, 44 F.3d 553, 556 n. 4 (7th Cir. 1995) (citing *Ragin,* 923 F.2d at 1002).

[82]*Johnson v. Macy,* 145 F.Supp.3d 907, 916 (C.D. Cal. 2015), citing, *Pack v. Fort Washington II,* 689 F.Supp.2d 1237, 1245 (E.D. Cal. 2009); *Mathews*, at *7; *Llanos v. Estate of Anthony Coehlo*, 24 F.Supp.2d 1052, 1056 (E.D. Cal. 1998) ("[P]laintiff need not show defendant's intent to discriminate based on familial status."); *Fair Housing Congress*, 993 F.Supp. at 1290 (C.D. Cal. 1997).

[83]SUF No. 22.

held that a written apartment rule stating, "Children will not be allowed to play or run around inside the building area at any time because of disturbance to other tenants or damage to building property" violated §3604(b) and §3604(c) as a matter of law, finding:

> "The first sentence of [the rule] is clearly a 'limitation' on the use by children tenants of the apartment facilities, and an ordinary reader of the first sentence of [the rule] could not reasonably interpret it otherwise." *Fair Housing Congress,* 993 F.Supp. at 1291.

In *Zhou v. Villa de Paz Apartments, LLC,* Case No. 2:17-cv-03795-MHB, *7, (D. Ariz. 9-25-2018), the court found that defendants' rules mandating supervision of minor children violated the Fair Housing Act as a matter of law.

In *Pack v. Fort Washington II,* 689 F.Supp. 2d 1237,1243 (E.D. Cal. 2009), the court found an adult supervision rule requiring supervision of children 10 and under while they were outside to violate §3604(b) because the rule on its face targeted families with children.  Since defendants failed to show why restrictions on children as old as 10 were reasonable, the court found the rule to violate §3604(b) as a matter of law.  Defendants' restrictions on children, herein, were even broader.

**C.      Defendants' Statement Violated §3604(c) as a Matter of Law**

In *Iniestra v. Cliff Warren Investments,* 886 F.Supp. 1161 (C.D. Cal. 7-31-2012), the court held that the apartment rules at issue therein, which contained an adult supervision rule, violated §3604(b) and §3604(c) as a matter of law.[84]  The adult supervision rule in *Iniestra* declared:

> "Children on the premises are to be supervised by a responsible adult at all times."[85]

---

[84]*Id.*, at 1168-69.

[85]*Iniestra*, 886 F.Supp. at 1164.

-16-

The *Iniestra* court found:

> **"[T]he Adult Supervision Rule . . . explicitly discriminate[s]**
> **against children by requiring that they–unlike adults–be**
> **supervised by an adult at all times."**[86]

The *Iniestra* court additionally found that the adult supervision rule was an "overbroad effort[] to address Defendants' purported safety concerns."[87]  It noted that other district courts have struck down similar adult supervision polices as "inappropriate attempts to address safety and noise concerns."[88]  It concluded that the adult supervision rule violated §3604(b) and §3604(c).[89]

Similarly, Defendants' Adult Supervision Rule violates both §3604(b) and §3604(c).  With respect to §3604(c), it enforces a limitation upon children's usage of the apartment facilities under threat of eviction, but places no such limitation on adults.  It thus indicates a limitation based on familial status.[90]  An ordinary reader of the Adult Supervision Rule could not interpret it otherwise.

## 2. Oral Statements

Defendant Li Ritchey, moreover, made several oral statements to Plaintiffs that violated §3604(c).

---

[86]*Id.*, at 1166.

[87]*Id.*, at 1168.

[88]*Id.*, at 1168.

[89]*Id.*, at 1168-69.

[90]"Familial status" is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . [a] parent . . ."  Familial status discrimination thus entails "discrimination against families with children." *Fair Housing Congress v. Weber*, 993 F.Supp. 1286, 1290 (C.D. Cal. 1997); *see also Mathews v. Arrow Wood LLC,* Case No. EDCV-07-1316-SGL, at *6 (C.D. Cal. April 2, 2009) ("Disparate treatment of children would, by implication, necessarily amount to one directed at families.")

### A.    Too Many Children Statement

First, Ms. Ritchey stated to Ms. Sandoval that Ms. Acosta "has too many kids. She can't live here. I want to evict her."[91]  After Ms. Sandoval told her that that was illegal,  Ms. Ritchey responded, "No, we have a family lawyer that will take care of it.  It is not a problem."[92]  Ms. Ritchey's statements indicated a preference, discrimination, or limitation based on familial status.  Plain and simple, Ms. Ritchey wanted to evict Ms. Acosta because she had "too many kids."  As such, Ms. Ritchey's statements violated §3604(c).

### B.    Children Can't Play Outside Without Adult Supervision Statement

Ms. Ritchey told Ms. Sandoval's then nine-year-old daughter, A.G., whom she found playing in the common areas, "You need to have your mom outside to play."[93] Ms. Ritchey's statement indicated a limitation based on familial status.  Briefly, A.G. was limited to playing outside only if her mother was outside with her.  As such, the statement violated §3604(c).

### C.    Calling the Police on Crying Babies Statement

On or about October 20, 2016, Ms. Ritchey told Mrs. Sandoval that she was to call the police on any tenant whose baby was crying at the apartment complex.[94]  Ms. Ritchey's statement indicated a discrimination based on familial status.  If a baby behaved like a baby, then Ms. Ritchey wanted the police to be summoned. No similar limitations were placed upon crying adults.  As such, the statement violated §3604(c).

### D.    Take Your Children to the Park Statement

On or about January 18, 2017, Ms. Ritchey told Plaintiff William Roman that his children were not allowed to play outside and if he wanted his children to play outside,

---

[91]SUF No. 28.

[92]SUF Nos. 29-30.

[93]SUF No. 35.

[94]SUF No. 59.

then he needed to take them to the park and, if he didn't, then his family would be evicted.[95] Ms. Ritchey's statement indicated a preference, discrimination, or limitation on where families with children were permitted to play.  No such restrictions were placed upon adult-only households.  As such, her statement violated §3604(c).

**D.   DEFENDANTS' FAILURE TO POST A FAIR HOUSING POSTER AT THE CASA BUENA CASA LYNNDA APARTMENTS VIOLATED 24 C.F.R. § 110.30**

**1.   Defendants Are Subject to the Fair Housing Act, As Such, They Were Required to Post a Fair Housing Poster at Casa Buena Casa Lynnda**

By offering dwellings in excess of four units for rent,[96] Defendants are subject to the Fair Housing Act.[97]  HUD is the federal agency charged by Congress with interpreting and enforcing the Fair Housing Act,[98] and it has promulgated regulations with respect to the display of a fair housing poster by persons subject to the Fair Housing Act.  Specifically, 24 C.F.R. §110.10(a) provides:

> "Except to the extent that paragraph (b) of this section applies, all persons subject to section 804 of the Act,[99] Discrimination in the Sale or Rental of Housing and Other Prohibited Practices, shall post and maintain a fair housing poster as follows:
>
> (2)(i) A fair housing poster shall be posted and

---

[95] SUF No. 42.

[96] Answer to First Supplemental Complaint at ¶6. [Doc. #39.]

[97] §3603(a)(2).

[98] See, 42 U.S.C. §3608(a).

[99] The Fair Housing Act is codified at 42 U.S.C. §§3601-3619.  These section numbers were transformed from the 800 series of numbers that were used in the original statute, so that §801 in the statute became 42 U.S.C. §3601, §802 became 42 U.S.C. §3602, and so on.

maintained at any place of business where the

dwelling is offered for sale or rental . . ."

**2.    Defendants Failed to Post a Fair Housing Poster at Casa Buena Casa Lynnda**

It is undisputed that Defendants failed to post a fair housing poster at the Casa Buena Casa Lynnda Apartments.[100] Accordingly, Defendants violated 24 C.F.R. §110.10(a), which "shall be deemed prima facie evidence of a discriminatory housing practice."[101]

**E.    DEFENDANTS HAVE VIOLATED THE UNFAIR BUSINESS PRACTICES ACT**

**1.    The Unfair Business Practices Act, Among Other Things, Prohibits Unlawful Business Acts and Practices**

The Unfair Business Practices Act of Business & Professions Code §17200 *et seq.* is not confined to anti-competitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.[102]  The Unfair Business Practices Act prohibits unfair competition, which is defined as "any unlawful, unfair, or fraudulent business act or practice . . . ."[103]  Because Business and Professions Code §17200 is written in the disjunctive, it establishes three varieties of unfair

---

[100]SUF No. 61.

[101]24 C.F.R. §110.30; *Blackington v. Quiogue Family Trust,* Case No. 11-CV-1670-W(WVG) *9 (S.D. Cal. 4-13-2013), Loislaw Federal District Court Opinions (failure to post Fair Housing poster violated 24 C.F.R. §110.30); *Na'im v. Sophie's Arms Fine Residences,* Case No. 13-cv-2515-JAH (BLM) *15 (S.D. Cal. 1-8-2015) (failure to post Fair Housing poster violated 24 C.F.R. §110.30). True and correct copies of the *Blackington* and *Na'im* opinions are lodged herewith.

[102]*Hewlett v. Squaw Valley Ski Corp..* 54 Cal.App.4th 499,520 (1997).

[103]Cal. Business & Professions Code §17200.

-20-

competition: acts or practices which are: 1) unlawful; 2) unfair; or 3) fraudulent.[104]

## 2. Any Type of Business Practice That is Forbidden by Law is an "Unlawful" Business Activity

The "unlawful" business activity proscribed by the statute consists of any type of business practice that, at the same time, is forbidden by law.[105]  An action for "unlawful" business activity based upon §17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under §17200.[106]  "The unfair competition law thus creates an independent action when a business practice violates some other law."[107]Herein, defendants committed "unlawful" acts by violating the Fair Housing Act.  Consequently, the "unlawful" requirement of §17200 makes a violation of the "borrowed" law a, per se, violation of §17200.

## 3. Defendants' Enactment of the Adult Supervision Rule was Forbidden by Law, As Such, Defendants Violated the Unfair Business Practices Act

Herein, Defendants enacted and enforced a rule against families with children that was illegal. As such, Defendants violated the Unfair Business Practices Act. Consequently, Plaintiffs are entitled to summary judgment on the Unfair Business Practices Act claim as a matter of law.

## F. DEFENDANTS HAVE VIOLATED CALIFORNIA'S UNRUH CIVIL RIGHTS ACT

---

[104]*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 83 Cal.Rptr. 2d. 548, 560; 20 Cal.4th 163 (1999); *Podolsky v. First Healthcare Corp.,* 50 Cal. App. 4th 632, 647 (1996).

[105]*Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383 (1992).

[106]*Cel-Tech,*83 Cal.Rptr. 2d. at 561 (1999).

[107]*Walker v. Countrywide Home Loans, Inc.,* 98 Cal.App.4th 1158, 1170 (Cal.App. 2002).

1.   **The Unruh Civil Rights Act Must be Construed to Banish Arbitrary, Invidious Discrimination by Business Establishments**

As an anti-discrimination statute, California's Unruh Civil Rights Act "'must be construed liberally' to 'create and preserve a nondiscriminatory environment in California business establishments by "banishing" or "eradicating" arbitrary, invidious discrimination by such establishments.'"[108] Consequently, the Unruh Civil Rights Act at California Civil Code §51 provides in pertinent portion:

> "All persons within the jurisdiction of this state are free and
> equal, and no matter what their sex, race, color, religion,
> ancestry, national origin, disability, medical condition, genetic
> information, marital status, sexual orientation, citizenship,
> primary language, or immigration status are entitled to the full
> and equal accommodations, advantages, facilities, privileges, or
> services in all business establishments or every kind
> whatsoever."

California Civil Code §51.2 further provides in pertinent part:

> "Section 51 shall be construed to prohibit a business
> establishment from discriminating in the sale or rental of
> housing based upon age."

2.   **Rental Housing is a Business Establishment under the Unruh Civil Rights Act**

The definition of "business" under the Unruh Civil Rights Act has been defined as "[e]verything about which one can be employed," and "synonymous with 'calling,

---

[108]*Glasby v. Mercy Hous., Inc.*, Case No. 17-cv-02153-DMR, at *4 (N.D. Cal. Oct. 25, 2017), citing, *Munson v. Del Taco*, 46 Cal. 4th 661, 666 (2009) (quoting *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007)).

occupation, or trade engaged in for the purpose of making a livelihood or gain.'"[109] "The term 'business establishment' has been uniformly construed as including rental housing."[110]

### 3.    The Unruh Civil Rights Act Prohibits Discrimination on the Bases of Age and Familial Status in Rental Housing

The Unruh Civil Rights Act, Cal. Civ. Code §51(b), prohibits discrimination on the basis of age and familial status.[111]  The statute broadly prohibits discrimination in the "accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."[112] As an anti-discrimination statute, the Unruh Act must be construed liberally to effectuate this purpose.[113]

### 4.    Apartment Rules That Violate §3604 of the Fair Housing Act Can Also Violate the Unruh Civil Rights Act

In *Pack v. Fort Washington II,* 689 F.Supp. 2d 1237,1249 (E.D. Cal. 2009), the court found that rules that violate §3604 of the Fair Housing Act because of age restrictions can also violate §51 of the Unruh Act.

### 5.    Defendants' Adult Supervision Rule Violates the Fair Housing Act and the Unruh Civil Rights Act

In particular, the *Pack* court found an adult supervision requirement for children ten and under to violate §3604(b) and §3604(c).[114]  The Adult Supervision Rule, herein, is much broader than the adult supervision requirements in *Pack,* requiring children 14

---

[109]*Burks v. Poppy Construction Co.,* 57 C.2d 463, 468 (1962).

[110]*Hubert v. Williams*, 133 Cal.App.3d Supp.1, 2 (1982).

[111] Cal. Civ. Code §51.2(a) (age); *Marina Point, Ltd. v. Wolfson*, 640 P.2d 115, 124 (Cal. 1982) (familial status).

[112]Cal. Civ. Code § 51(b).

[113]*Munson*, 46 Cal. 4th at 666 (citation and internal quotation marks omitted).

[114]*Pack,* 689 F.Supp. at 1244, 1246.

and under to have adult supervision while on the premises.  Put simply, for the same reasons the *Pack* court found the adult supervision requirement for children ten and under, so, too, should this court find the Adult Supervision Rule likewise violates the Unruh Act. Accordingly, Plaintiffs are entitled to judgment on this claim as a matter of law.

## IV.

## CONCLUSION

A trial is unnecessary to establish that Defendants MSL Capital, LLC, and Li Ritchey have violated the Fair Housing Act (First Claim), California's Fair Employment and Housing Act (Second Claim), California's Unruh Civil Rights Act (Third Claim), and California's Unfair Business Practice Act (Fourth Claim).  For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment on liability should be granted, and the case should be set for a jury trial in accordance with this Court's order. Alternatively, the Court should determine that the following material facts are not genuinely at issue:

1.    The Adult Supervision Rule violates 42 U.S.C. §3604(b);

2.    The Adult Supervision Rule violates 42 U.S.C. §3604(c);

3.    The oral statements made by Defendant Li Ritchey violate 42 U.S.C. §3604(c);

4.    Defendants' failure to post a Fair Housing poster violated 24 C.F.R. §110.30;

5.    Each of Defendants' violations of 42 U.S.C. §§3604(b) and (c) also constitutes a violation of the California Fair Employment and Housing Act, Cal. Gov't Code §12955(a) and (c), respectively;

6.    Each of Defendants' violations of 42 U.S.C. §§3604(b) and (c) and Cal. Gov't Code §§12955(a) and (c) also constitutes a

-24-

violation of the California Unfair Business Practices Act, Cal.

Bus. & Prof. Code §17200; and

7.     The Adult Supervision Rule violates California's Unruh Civil Rights Act,

Cal. Civil Code §51 *et seq.*

Dated: October 2, 2018                                  LAW OFFICES OF
                                                        STUART E. FAGAN


                                                        By: /s/ Stuart E. Fagan
                                                            Stuart E. Fagan
                                                        Attorneys for Plaintiffs