UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 17-2066 JGB (SPx) | Date | November 5, 2018 |
| Title | *William Roman, et al. v. MSL Capital, LLC, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Adele C. Frazier |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Stuart E. Fagan | Rachel A. Mihai |
| | JaVon Aubrey Payton |

**Proceedings:   Order GRANTING in Part and DENYING in Part Plaintiffs' Motion for Partial Summary Judgment**

Before the Court is Plaintiffs' motion for partial summary judgment or summary adjudication. ("Motion," Dkt. No. 34.) On November 5, 2018, the Court held a hearing on this Motion. After considering argument and papers filed in support of, and in opposition to, the Motion, the Court GRANTS the Motion in part and DENIES it in part.

### I.   BACKGROUND

On October 7, 2017, Plaintiffs filed a complaint against defendants MSL Capital, LLC and Li Ritchey. ("Complaint," Dkt. No. 1.) The Complaint alleges five causes of action: (1) discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq.; (2) discriminatory housing practices under the California Fair Employment and Housing Act, California Government Code §§ 12927 and 12955, et seq.; (3) discrimination on the basis of familial status in violation of the California Unruh Civil Rights Act; (4) unfair business practices under the California Business & Professions Code § 17204; and (5) negligence.

On October 2, 2018, Plaintiffs filed this Motion, with the following documents attached in its support:

- Statement of Undisputed Facts ("SUF," Dkt. No. 34-2);

- Grant deed to 24271 and 24356 Webster Avenue, Moreno Valley, California, Riverside County, Recorder's Doc. # 2016-0447503, October 5, 2016 (Dkt. No. 34-4);
- Letter from Li Ritchey to tenants, October 13, 2016 (Dkt. No. 34-5);
- Lease agreement re: Renee Sandoval and Diego Sandoval, October 24, 2016 (Dkt. No. 34-6);
- Letter prepared by Li Ritchey for Renee Sandoval, October 24, 2016 (Dkt. No. 34-7);
- 60-day notice to terminate tenancy of Renee Sandoval and Diego Sandoval, October 24, 2016 (Dkt. No. 34-8);
- Lease agreement re: Catherine Perez and Jorge Arias, October 23, 2016 (Dkt. No. 34-9);
- 60-day notice to terminate tenancy of Catherine Perez and Jorge Arias, January 20, 2017 (Dkt. No. 34-10);
- Lease agreement re: William Roman and Desiree Acosta, October 23, 2016 (Dkt. No. 34-11);
- 60-day notice to terminate tenancy of William Roman and Desiree Acosta, January 20, 2017 (Dkt. No. 34-12);
- Letter from Li Ritchey to tenants, February 1, 2017 (Dkt. No. 34-13);
- Letter from Li Ritchey to tenants, October 24, 2016 (Dkt. No. 34-14);
- Defendant MSL Capital's responses to Plaintiff's interrogatories (Dkt. No. 34-15);
- Excerpts from the June 13, 2018 deposition of Li Ritchey (Dkt. No. 34-22);
- Declaration of Stuart E. Fagan (Dkt. No. 34-23);
- Declaration of Catherine Michelle Perez (Dkt. No. 34-24);
- Declaration of William Roman (Dkt. No. 34-25);
- Declaration of Renee Sandoval (Dkt. No. 34-26).

On October 15, 2018, Defendants filed their opposition to the Motion. ("Opposition," Dkt. No. 38.) Defendants submitted the following documents in support of their Opposition:

- Statement of Disputed Facts ("SUF Reply," Dkt. No. 39);
- Defendant's Separate Statement of Undisputed Facts ("DSUF," Dkt. No. 40);
- Evidentiary objections to Plaintiff's Statement of Undisputed Facts (Dkt. No. 41);
- Request for judicial notice of Plaintiffs' Complaint and Defendants' Answer in this case (Dkt. No. 42);
- Declaration of Robert Kehiayan (Dkt. No. 43);
- Declaration of Li Ritchey ("Ritchey Decl.," Dkt. No. 44);
- Declaration of Sarah Krousey (Dkt. No. 45);
- Declaration of JaVon A. Payton (Dkt. No. 46);
- Notice of Lodgment (Dkt. No. 47), with the following attached exhibits:
    - Letter to tenants re: new management, October 13, 2016 (Dkt. No. 48, Exh. 1);
    - Letter to tenants re: management authorization, October 24, 2016 (Dkt. No. 48, Exh. 2);
    - Lease agreement re: William Roman and Desiree Acosta (Dkt. No. 48, Exh. 3);
    - Lease agreement re: Catherine Perez and Jorge Arias (Dkt. No. 48, Exh. 4);
    - Lease agreement re: Renee Sandoval and Diego Sandoval (Dkt. No. 48, Exh. 5);

- o Excerpts of deposition transcript of Desiree Acosta (Dkt. No. 49, Exh. 6);
- o Excerpts of deposition transcript of Catherine Perez (Dkt. No. 49, Exh. 7);
- o Excerpts of deposition transcript of Renee Sandoval (Dkt. No. 49, Exh. 8);
- o Excerpts of deposition transcript of Li Ritchey (Dkt. No. 49, Exh. 9);
- o Three day notice to pay rent or quit issued to William Roman and Desiree Acosta, December 5, 2016 (Dkt. No. 50, Exh. 10);
- o Three day notice to pay rent or quit issued to William Roman and Desiree Acosta, November 4, 2016 (Dkt. No. 50, Exh. 11);
- o Three day notice to pay rent or quit issued to Catherine Perez, December 5, 2016 (Dkt. No. 50, Exh. 12);
- o Letter to William Roman and Desiree Acosta regarding noise, December 26, 2016 (Dkt. No. 51, Exh. 13);
- o 60-day notice to terminate tenancy of William Roman and Desiree Acosta, January 20, 2017 (Dkt. No. 51, Exh. 14);
- o 60-day notice to terminate tenancy of Catherine Perez, January 20, 2017 (Dkt. No. 51, Exh. 15);
- o 30-day notice of intent to vacate issued to Catherine Perez, January 25, 2017 (Dkt. No. 51, Exh. 16);
- o 60-day notice to terminate tenancy of Renee Sandoval and Diego Sandoval, January 20, 2017 (Dkt. No. 52, Exh. 17);
- o Letter to all tenants regarding adult supervision rule, February 1, 2017 (Dkt. No. 52, Exh. 18);
- o Letter from Christine Mayes, April 4, 2017 (Dkt. No. 52, Exh. 19);
- o Letter from Sarah Krousey and Yaser Jabbar, March 16, 2017 (Dkt. No. 52, Exh. 20);
- o Defendants' responses to Plaintiffs' interrogatories (Dkt. No. 52, Exh. 21);
- o Case history of Robert Kehiayan (Dkt. No. 52, Exh. 22);
- o Curriculum vitae of Robert Kehiayan (Dkt. No. 52, Exh. 23).

On October 22, Plaintiffs replied. ("Reply," Dkt. No. 55.) In support of their Reply, Plaintiffs submitted the following documents:

- Response to DSUF ("DSUF Reply," Dkt. No. 55-1);
- Evidentiary objections (Dkt. No. 55-2);
- Notice of lodgment (Dkt. No. 55-3);
- Excerpts from the deposition of Li Ritchey (Dkt. No. 55-4)

## II. FACTS

### A. Undisputed Facts

Except where noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

### 1. Change of Ownership of the Casa Buena and Casa Lynnda Apartments

In early-October 2016, Defendant MSL Capital, LLC ("MSL") acquired ownership of the Casa Buena and Casa Lynnda apartment buildings, located at 24271 and 24356 Webster Avenue, Moreno Valley, California ("Apartment Complex" or "Complex"). (SUF ¶ 1; DSUF ¶ 1.)[1] MSL owns the Complex and has no other assets and no employees. (SUF Reply ¶ 11; SUF ¶¶ 12-13.) Defendant Li Ritchey manages MSL and was the property manager of the Complex from at least October 13, 2016 until the present.[2] (SUF Reply ¶ 15). Ritchey is the only person authorized to manage the Complex, which does not have an on-site manager or on-site office. (DSUF ¶¶ 6-7.) As manager, Ritchey would visit the Complex two to three times per week to address maintenance requests and other tenant needs or show the property to rental applicants. (DSUF ¶¶ 8-9.)

On or about October 13, 2016, Ritchey sent a letter to all Complex tenants notifying them that that she had become the new property manager of the Complex. (SUF ¶ 16; DSUF ¶ 13.) The letter also informed them that they would be provided with a new lease ("Lease"), which would neither increase their rent nor extend the duration of their leases.[3] (DSUF ¶¶ 14-15.) The Lease, which was drafted by Ritchey, included the provision that "Tenant acknowledges receipt of, and has read a copy of, Landlord's rules and regulations…Tenant understands that serious or repeated violations of the rules may be grounds for termination. Landlord may change the rules and regulations without notice." (DSUF ¶¶ 16-17.)

The Tenant Rules and Regulations were attached to the Leases and contained, inter alia, the following rule: "Supervision: All children under age 14 must be supervised by adults 18 years or older while on the premises. Residents who fail to supervise their children are subject to eviction. Premises include, but are not limited to common areas, grounds, etc." ("Adult Supervision Rule," SUF ¶ 22; DSUF ¶ 18.) In February 2017, Ritchey issued formal notice to all plaintiffs that the Adult Supervision Rule was removed from the Tenant Rules and Regulations. (DSUF Reply ¶ 28.) No written warning or default notices were issued to Plaintiffs or other tenants for violation of this rule while the rule was in effect. (DSUF Reply ¶ 26.)

---

[1] It is disputed whether these two buildings, which are located across the street from each other and constitute a single complex, (SUF Reply ¶ 11; DSUF ¶ 4), were acquired on October 5, 2016 or October 12, 2016. (SUF ¶ 2; DSUF ¶ 1.)

[2] Defendants dispute this and claim that Renee Sandoval was the property manager of the Complex from October 17 to October 24, 2016, but have admitted that Ritchey was manager beginning October 13, 2016 ("Answer," Dkt. No. 16, ¶ 10) and do not cite to evidence to the contrary. (SUF Reply ¶ 15.)

[3] While Defendants dispute whether tenants were "required" to sign the new lease, (SUF Reply ¶ 20), it does not appear that this is relevant to the legal issues in dispute.

On October 24, 2016, Renee Sandoval ceased to work as the Complex's onsite manager. (SUF Reply ¶ 17.)[4] On the same day, Ritchey posted a written notice on all tenants' doors that she was the "only person authorized to manage the properties at Casa Buena and Casa Lynnda." (SUF ¶ 18.) Also on October 24, 2016, Ritchey served a notice on all tenants that informed them that bicycles, among other things, could not be stored in front of their apartments. (SUF ¶ 61.) Since acquiring the Complex, Defendants have posted a banner that advertises it as a "quiet" complex. (SUF ¶ 62.) Defendants did not post a Fair Housing poster at the Complex until after Plaintiffs had vacated the Complex. (SUF ¶ 61.)

### 2. Plaintiffs' Tenancy at Casa Buena and Casa Lynnda Apartment Buildings

Renee Sandoval moved into the Complex in 2000, when she was 16 years old. (SUF ¶ 3.) Her daughter, A.G., was born in 2006 and lived with Sandoval for the remainder of her tenancy in the complex. (SUF ¶ 5.) Ms. Sandoval was the onsite manager of the Complex until October 24, 2016. (SUF Reply ¶ 17.) On October 26, 2016, Ritchey executed a new lease with Sandoval which took effect on November 1, 2016 and terminated on December 31, 2016. (DSUF ¶¶ 30-31.) The new lease provided that Sandoval would pay $400 in rent per month until December 31, 2016. (Id.) In November, 2016, Ritchey offered Sandoval a new lease at a higher rate, which Sandoval declined to accept. (DSUF ¶¶ 34-35.) Sandoval and her family moved out of the Complex in December 2016. (DSUF ¶ 36.)

Catherine Michelle Perez moved into the Complex in February or March 2012. (SUF Reply ¶ 6.) Perez has two children, born in 2013 and 2014, who lived with her at the Complex. (SUF ¶ 8.) On October 23, 2016, Ritchey executed a new lease with Perez which commenced on November 1, 2016. (DSUF ¶ 38.) During Perez's tenancy with Defendants, she was at times late to pay rent and utility bills, (DSUF ¶ 39), because of inconsistent employment. (DSUF ¶ 43; Perez Decl. at 33:6-7.) Defendants issued Perez a 3-day notice to pay rent or quit on December 5, 2018.[5] (DSUF ¶ 41.) On January 20, 2017, Ritchey served on Perez a 60-day notice to terminate tenancy. (SUF ¶ 44.) After Perez vacated her apartment, Ritchey rented the apartment to a family with children at a higher rate. (DSUF ¶ 45.) Ritchey did not give Perez the option of continuing to rent her apartment at a higher rate. (SUF ¶ 55.)

Plaintiffs William Roman and Desiree Acosta moved into the Complex in late-2012 or early 2013, along with their three children, D.R., N.R., and J.R. (SUF Reply ¶¶ 9-10.) On October 23, 2016, they executed a month-to-month lease with Ritchey, which commenced on November 1, 2016. (DSUF ¶ 46-47.) During their tenancy, Ritchey served Roman and Acosta with 3-day notices to quit or pay rent twice and received at least one noise complaint about them from other tenants. (DSUF ¶ 50-51.) Ritchey later served a 60-day notice to terminate tenancy

---

[4] Parties dispute whether Sandoval was terminated or voluntarily ceased working as the onsite manager by mutual agreement. (SUF Reply ¶ 17.)

[5] Although the DSUF states December 5, 2018 as the date, this appears to be a typo, since from the context the correct date appears to be December 5, 2016.

on Roman and Acosta. (SUF ¶¶ 50-51.) After Roman and Acosta vacated the apartment, Ritchey raised the rent on the apartment and rented it to another tenant. (SUF ¶ 55.) Roman and Acosta were not offered to continue to rent the apartment at a higher rate. (Id.)

## B. Disputed Facts

While it is undisputed that Defendants put the Adult Supervision Policy into place shortly after acquiring the Complex, Defendants have specifically denied essentially every allegation related to Ritchey's discriminatory statements about families with children. The following facts are in dispute:

Renee Sandoval's declaration recounts a conversation she had with Ritchey in or around October 2016, which Defendants deny. (Sandoval Decl. ¶ 6; SUF ¶ 25.) During that conversation, Ritchey saw Plaintiff Acosta walking to her car with her five children and asked Sandoval, "Oh, my God, are all those her children? Is she married?" (SUF ¶¶ 26-27.) Ritchey then stated, "She has too many kids. She can't live here. I want to evict her." (SUF ¶ 28.) When Sandoval told Ritchey that this would be illegal, Ritchey responded that she would "have a family lawyer …take care of it." (SUF ¶ 30.) Defendant denies having made any of these statements. (Ritchey Depo. at 170: 6-29; SUF Reply ¶¶ 25-30.)

Sandoval also describes an incident in which Ritchey told Sandoval's then-nine-year-old daughter, A.G., "You need to have your mom outside to play" after finding her playing in the common areas. (Sandoval Decl. ¶ 7; SUF ¶ 35.) A.G. told Ritchey that her mother was present and pointed out Sandoval for Ritchey. (SUF ¶¶ 36-38.) A.G. had several encounters with Ritchey and grew so afraid of her that she no longer desired to go outside and play when Ritchey was at the Complex. (SUF ¶ 39.) Ritchey denies having any interactions with A.G. (Ritchey Depo at 79: 15-24; SUF Reply ¶¶ 35-39.) Sandoval's declaration also states that on October 20, 2016, Ritchey directed Sandoval to call the police and report any tenant whose baby was crying at the apartment complex. (Sandoval Decl. ¶ 8; SUF ¶ 59.) Ritchey specifically denied making this statement during in her deposition. (Ritchey Depo. at 160:23 – 161:7.)

William Roman has submitted a declaration stating that, on or around January 18, 2017, he was with his children while they were playing in the common areas of the Complex. (SUF Reply ¶ 40.) Ritchey saw Roman's children and told them to be quiet or go inside. (SUF ¶ 41.) Ritchey then told Roman that his children were not allowed to play outside, and that, if the wanted them to play outside, he needed to take them to a park. (SUF ¶ 42.) Ritchey told him that if he did not comply, his family would be evicted. (SUF ¶ 42.) Roman objected to Ritchey's statement and, two days later, on January 20, 2018, Ritchey served him with a 60-day notice to terminate tenancy. (SUF ¶ 44.) While Defendants do not dispute serving Roman's family with a 60-day notice to terminate tenancy on January 20, 2018, in a deposition Ritchey specifically denied having this conversation with Roman, instructing him that he needed to take his children

to the park to play, or threatening him with eviction if he did not comply. (SUF Reply ¶¶ 40-43.)[6]

While it is undisputed that Ritchey served 60-day notices to terminate tenancies on all Plaintiffs, (SUF ¶¶44, 48, 51), her motivations for doing so are also disputed. Plaintiffs claim that Ritchey served Plaintiffs with 60-day notices for primarily economic reasons and because "it was the most profitable thing she could do." (SUF ¶¶ 47, 49, 51.) While in her deposition Ritchey stated that she was motivated by economic reasons (Ritchey depo. at 7:18, 10:16), Defendants have also submitted a declaration in which Ritchey states that Plaintiffs Perez, Roman, and Acosta had been late to pay rent on multiple occasions prior to being served with 60-day notices. (Ritchey Decl. ¶¶ 12-13.) While the specific motivations for Plaintiffs' evictions remain in dispute, it remains undisputed that only families with children have been served 60-day notices for reasons other than non-payment of rent. (SUF Reply ¶ 53.) It is also undisputed that Defendants raised the rent on Plaintiffs' apartments after Plaintiffs vacated them. (SUF ¶ 54.)

There is some dispute as to the duration and purpose of the Adult Supervision Rule. Defendants' Answer admits "the inadvertent inclusion of a supervision notice, which … was terminated on February 1, 2017," (Answer ¶ 24), and, in a deposition, Ritchey stated that she did not revoke the Rule until she was notified that it was inappropriate by Plaintiff Roman. (Ritchey Depo at 175: 18-24.) However, Defendants' Answer denies that the Adult Supervision Rule was ever enforced, (Answer ¶ 24), and, in her October 15, 2018 declaration, Ritchey avers that immediately after circulating the rule, she "chose not to implement this rule" and "did not enforce this rule during plaintiffs' tenancies." (Ritchey Decl. ¶ 8.) Defendants also argue that the child supervision rule was put into place because of safety concerns related to the presences of "homeless people wandering on the premises" and "outsiders committing vandalism on the property." (DSUF ¶¶ 20-21.)

**C. Evidentiary Objections**

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). See Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with content that would be admissible at trial, even if the form of the evidence would not be admissible at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001). In reaching its decision, the Court relies only on facts

---

[6] Plaintiffs argues that Defendants do not deny threatening the Roman/Acosta family with eviction if the children played outside. (Reply at 2.) However, during her deposition, Ritchey specifically denied speaking to Roman on the occasion in question, denied giving "any kind of notice" to Roman or Acosta regarding their children playing outside, and stated that her only conversation with Acosta arising from the incident in question had been about the fact that Ritchey had spoken with Acosta's daughter. (Ritchey depo. at 143-145)

enumerated in the above section. Any objections to other evidence submitted but not relied upon by the Court are not addressed. See Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted"); Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010) (A district court must rule on "evidentiary objections that are *material* to its ruling") (emphasis added). Because the Court does not rely on disputed facts in reaching its decision on this Motion, it does not consider evidentiary objections raised about those facts.

Both parties have objected to numerous exhibits on the grounds that they are irrelevant, speculative, prejudicial, or misstates the evidence. These objections are "duplicative of the summary judgment standard itself," at which the court considers whether any material facts remain in dispute. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Thus, the Court need not consider such objections and OVERRULES objections on these grounds. Moreover, purported facts which are speculative, irrelevant, prejudicial, or which misstate evidence are not material and are thus "redundant" and unnecessary to consider here. Id.; see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.")

Defendants object to SUF ¶ 2, which states that Defendant MSL acquired ownership of the complex, on October 5, 2016, on the grounds that it misstates the evidence and is hearsay. However, Plaintiffs have also submitted a certified copy of the October 5, 2016 grant deed transferring the properties at 24271 and 24356 Webster Avenue to MSL Capital, (Dkt. No. 34-4), and Defendants have submitted the declaration of Ritchey, which confirms the date of this transfer, (Dkt. No. 44.) Neither the grant deed nor Ms. Ritchey's declaration constitute hearsay. This objection is OVERRULED.

Defendants object to SUF ¶ 20, which states that "all of the new tenants were required to sign a new lease" after Defendants acquired the complex, on the grounds of lack of personal knowledge, hearsay, and that it misstates or mischaracterizes the evidence. In their DSUF, however, Defendants state that it is undisputed that Defendants "informed all tenants that management would provide them with a new lease." (DSUF ¶¶ 14-15.) Parties have submitted no briefing on whether Plaintiffs were in fact required to sign this lease and the Court finds that the disctinction between "providing" a lease and "requiring" that tenants sign it is not material to this Motion. Accordingly, this objection is OVERRULED.

Defendants object to SUF ¶ 22, which contains the text of the Adult Supervision Rule, on the grounds that it is hearsay. However, Defendants have themselves also submitted copies of the same leases on which this fact is based, which also contain the text of the Adult Supervision Rule. (Dkt. No. 48, Exhs. 3-5.) Even if they had not, these documents would be admissible, as contracts signed by parties to a dispute are not hearsay. Accordingly, this objection is OVERRULED.

Defendants object to SUF ¶ 61, which states that Ms. Ritchey did not post a Fair Housing poster at the complex, on the grounds that it misstates or mischaracterizes evidence. Presumably this objection is based on Defendants' assertion that Ritchey posted a Fair Housing poster after

Plaintiffs vacated the premises. It is true that Defendants' SUF ¶ 61 does not specify whether or not Ritchey posted a Fair Housing poster after they vacated the Complex. However, as discussed below in Section IV(C), infra, whether Defendants put up a poster after Plaintiffs vacated the Complex is immaterial to their legal claims. Accordingly, this objection is OVERRULED.

### III.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### IV.  DISCUSSION

Plaintiffs seek summary judgment as to the following issues: (1) that Defendants' publication of the Adult Supervision Rule violated 42 U.S.C. §§ 3604(b) and (c), related provisions of the California Fair Housing and Employment Act, and the California Unruh Civil Rights Act.; (2) that Defendant Ritchey's statements threatening to evict Roman and his family if he let his children play outside violated 42 U.S.C. § 3604(c); and (3) that Defendants' failure to post a Fair Housing poster violated 24 C.F.R. §§ 110.10(a) and 110.30.[7] The Court will consider each in turn.

---

[7] Plaintiffs do not seek summary judgment as to their fourth and fifth causes of action, for unfair business practices unfair business practices under the California Business & Professions Code § 17204 and for negligence.

**A. Publication of the "Adult Supervision Rule"**

The Fair Housing Act "broadly prohibits discrimination against families with children in connection with the sale and rental of housing." Balvage v. Ryderwood Improvement & Serv. Ass'n, Inc., 642 F.3d 765, 769 (9th Cir. 2011). This includes discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith" because of familial status. 42 U.S.C. § 3604(b). Also prohibited is the making, printing, or publishing of any statement, notice, or advertisement with respect to the sale or rental of a dwelling that indicates any preference on the basis of familial status, or intention to make such preference. 42 U.S.C. § 3604(c). Plaintiffs contend that the Adult Supervision Rule violates both § 3604(b) and § 3604(c), as well as the California Fair Employment and Housing Act.

**1. Violation of 42 U.S.C. § 3604(b)**

In order to prove a violation of 42 U.S.C. § 3604(b), a plaintiff must first make out a prima facie violation of the statute. This may be accomplished by "establishing the existence of 'facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households.'" Iniestra v. Cliff Warren Investments, Inc., 886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012) (quoting U.S. v. Plaza Mobile Estates, 273 F.Supp.2d 1084, 1091 (C.D. Cal. 2003)). It is undisputed that, in late October, 2016, after acquiring the Casa Buena and Casa Lynnda apartment buildings, Defendants provided Plaintiffs with new lease agreements containing new tenant rules and regulations. (Ritchey Decl. ¶ 6; DSUF ¶¶ 30, 31, 38, 46, 47.) The lease warned that "serious or repeated violations of the rules may be grounds for termination." (Ritchey Decl. ¶ 6.) It is also undisputed that among the tenant rules and regulations was the Adult Supervision Policy, which provided that "All children under age 14 must be supervised by adults 18 years or older while on the premises. Residents who fail to supervise their children are subject to eviction. Premises include, but are not limited to common areas, grounds, etc." (SUF ¶ 22; DSUF ¶ 18.)

The Court finds that the Adult Supervision Rule was facially discriminatory. The rule explicitly burdened families that included children, requiring parents to be present and supervising children in areas outside of their apartment, a burden not placed on families without children or on single adults living in the Complex. See Iniestra, 886 F. Supp. 2d at 1166 (apartment rules requiring children on premises to be supervised at all times was facially discriminatory); U.S. v. Plaza Mobile Estates, 273 F. Supp. 2d at 1091 (adult supervision rules were facially discriminatory because they "treat[ed] children, and thus, families with children, differently and less favorably than adults-only households."). Even if the rule was issued in error, this has no bearing on whether the rule was facially discriminatory. See Iniestra, 886 F. Supp. 2d at 1166 (error insufficient to disclaim liability for discriminatory policy, since, for the three months it was in effect, plaintiffs had believed that its mandate was official).

While Defendants concede that the Adult Supervision Rule was incorporated into the leases signed by Plaintiffs, (Opp. at 11), they argue that, after the leases were signed, Ritchey "decided not to implement the rule … before the plaintiff's tenancies began on November 1,

2016." (Id.) In support of this claim, Defendants have submitted a declaration signed by Ritchey on October 15, 2018, the date of the filing of their opposition. (Ritchey Decl. at 5.) The Court finds that statements in Ritchey's declaration are insufficient to create a genuine dispute of material fact as to whether Defendants put in place a facially discriminatory rule at the Complex. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009) (quoting Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991)). However, this rule, which is designed to prevent litigants from artificially generating factual disputes for the purpose of thwarting summary judgment, does not preclude non-moving parties from elaborating upon, explaining, or clarifying prior deposition testimony through an affidavit. Id. Thus, prior to disregarding a contradictory affidavit made subsequent to deposition testimony, the district court must first make the factual determination that the contradiction was "actually a sham." Kennedy 952 F.2d 267 (internal quotation omitted.)

The Ritchey Declaration presents precisely the sort of sham issue contemplated by the Ninth Circuit in Kennedy and Nelson and is not sufficient to create a genuine issue of triable fact. The Court weighs three facts in reaching this determination. First, prior to the signing of the affidavit, Defendants had previously stated on at least two occasions that the Adult Supervision Rule was not terminated until February 1, 2017. In their Answer, Defendants admitted to "the inadvertent inclusion of a supervision notice, which … was terminated on February 1, 2017." (Answer ¶ 24.) Later, during a deposition, Ritchey stated that she did not revoke the Rule until after she was notified that it was inappropriate by Plaintiff Roman. (Ritchey Depo at 175: 18-24.) Second, the Court finds Ritchey's 11th-hour statement that she "chose not to implement" the rule to be highly implausible, as there is no corroborating evidence of her decision and no suggestion that Ritchey took any steps to notify Plaintiffs that she had decided not to implement or enforce the rule prior to February 1, 2017. Finally, the timing of the Ritchey declaration – signed on the day on which Defendants filed their Opposition – itself suggests that the declaration was made specifically for the purpose of generating an artificial dispute of material fact. The Court therefore finds that there is no genuine dispute as to whether Defendants enacted a facially discriminatory policy, and that Plaintiffs have therefore made out a prima facie violation of 42 U.S.C. § 3604(b).

Once a prima facie violation of 42 U.S.C. § 3604(b) is established, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the policy. Gamble v. City of Escondido, 104 F.3d 300, 305 (9th Cir. 1997). Courts in this district have placed a higher burden on defendants in § 3604(b) cases involving facially discriminatory policies, requiring them to show not only that the challenged discriminatory policy is legitimate, but also that it "constitute[s] a compelling business necessity and that they have used the least restrictive means to achieve that end." Iniestra, 886 F. Supp. 2d at 1167; see also Fair Hous. Cong. v. Weber, 993 F. Supp. 1286, 1292 (C.D. Cal. 1997). While the Ninth Circuit has not directly addressed defendants' required showing in § 3604(b) cases based on facially discriminatory policies, it has applied this higher test to disparate impact cases brought under Title VII. Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182, 1195 (9th Cir. 2006). In light of this, the Court aligns with other courts in this district and finds that Defendants must show that the challenged Adult

Supervision Rule served a compelling business necessity and that Defendants used the least restrictive means to achieve that end.

Here, Defendants argue that the Adult Supervision Rule was motivated by a concern for children's safety. The Court finds that, while tenant safety is compelling business necessity, Defendants' policy was not narrowly tailored to use the least restrictive means to achieve that end. Defendants articulate no connection between their broad sweep of their policy, which appears to require adult supervision at all hours of the day and in all common spaces in the Apartment Complex, and any concrete threats to children's safety. As another court in this district has held, "the mantra of child safety cannot and is not sufficient to justify a restriction absent some showing that the particular concern captured by this rationale has a concrete connection to the particular area and activity sought to be restricted." Mathews v. Arrow Wood LLC, Case No. 07-cv-1316-SGL, 2009 WL 8659593, at *9 (C.D. Cal. Apr. 2, 2009). Here, Defendants' policy had no connection to any particular area of the complex, any particular time of day, or any particular activity undertaken by children. Instead it simply required that children under the age of fourteen be supervised at all times while "on the premises." Such a policy is overbroad. See Iniestra v. Cliff Warren Investments, Inc., 886 F. Supp. 2d 1161, 1168 (C.D. Cal. 2012).[8] This is to broad to meet the "narrowly drawn" requirement.

Because Plaintiffs have shown that the Adult Supervision Rule facially violated § 3605(b) and Defendants have not shown that it was narrowly tailored to serve a compelling business interest, the Court GRANTS summary judgment as to Plaintiffs' claim that the Adult Supervision Rule violates 42 U.S.C. 3604(b).

### 2. Violation of 42 U.S.C. § 3604(c)

Plaintiffs argue that the Adult Supervision Rule also violated 42 U.S.C. § 3604(c). Under § 3604(c), it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on … familial status …or an intention to make any such preference, limitation, or discrimination." Unlike § 3604(b), § 3604(c) is not analyzed under burden-shifting framework and does not require a showing of discriminatory intent. Rather, the test is whether an ordinary reader would conclude that the rule suggests a preference. Iniestra, 886 F. Supp. 2d at 1168; Blackington v. Quiogue Family Tr.,

---

[8] Defendants also appear to suggest a connection between the Adult Supervision Policy and (1) the fact that homeless people had entered the property before and (2) that "outsiders (including children)" had committed vandalism on the property. (Opp. at 3.) The Court sees no plausible way in which the Adult Supervision Policy could be construed as aimed at preventing the entry of homeless people or vandals onto the Complex. To the extent that Defendants raise this in support of their claims that the Adult Supervision Policy was aimed at safety, the Court sees no evidence that the presence of homeless people posed any threat to children. Vandals, by definition, also pose no threat to the physical safety of children.

Case No. 11-CV-1670-WVG, 2013 WL 1701883, at *5 (S.D. Cal. Apr. 18, 2013). In light of the above discussion, the Court finds that an ordinary reader would conclude that the Adult Supervision Rule limits the ability of families with children to make use of and enjoy the facilities of the Apartment Complex. See Iniestra, 886 F. Supp. 2d at 1168 (substantially identical adult supervision rule violated § 3604(c)); Fair Hous. Cong. v. Weber, 993 F. Supp. 1286, 1291 (C.D. Cal. 1997) (limitation on the children's play in common areas violated § 3604(c) because an ordinary reader could only reasonably interpret it as a limitation on the use of apartment facilities by children tenants). This suggests a preference against families without children. The Court therefore GRANTS summary judgment as to Plaintiffs' claim that the Adult Supervision Rule violates 42 U.S.C. 3604(c).

### 3. Violation of California Fair Employment and Housing Act

Plaintiffs argue that the Adult Supervision Rule violates the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955(a) and (c). These FEHA provisions are substantially identical to those of 42 U.S.C. 3604(b) and (c). Indeed, the FEHA is "intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination." Brown v. Smith, 55 Cal. App. 4th 767, 780, 64 Cal. Rptr. 2d 301, 309 (1997). Liability under these statutes is thus coextensive with liability under Plaintiffs' Fair Housing Act claims. See Iniestra v. Cliff Warren Investments, Inc., 886 F. Supp. 2d 1161, 1169 (C.D. Cal. 2012) (finding FEHA liability coextensive with Fair Housing Act liability). Because these provisions of the FEHA mirror the Fair Housing Act under which the Court has found Defendants liable, the Court GRANTS summary judgment and finds that the Adult Supervision Rule also violates Cal. Gov't Code § 12955(a) and (c).

### 4. Violation of California Unruh Civil Rights Act

Plaintiffs argue that the Adult Supervision Rule violates the California Unruh Civil Rights Act. The Act states that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51. Under Cal. Civ. Code § 51.2, the Act "shall be construed to prohibit a business establishment from discriminating in the sale or rental of housing based upon age."

Both parties have provided extremely sparse briefing on this claim. It appear that the Unruh Act protects against "intentional discrimination that is unreasonable, arbitrary, or invidious." Cohn v. Corinthian Colleges, Inc., 169 Cal. App. 4th 523, 526 (2008) (emphasis added). It remains disputed, however, whether the inclusion of the discriminatory policy was intentional, as Ritchey has stated that her inclusion of the Adult Supervision Rule was unintentional. (Answer ¶ 24; Ritchey Depo. at 175: 18-24.) Plaintiffs have offered no briefing as to why the accidental inclusion of this provision would violate the Unruh Civil Rights Act, which requires a plaintiff claiming a violation to prove intentional discrimination. See Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664 (2009) (intentional discrimination necessary to establish Unruh

Civil Rights Act violation, with exception for violations of rights under the Americans with Disabilities Act); Cohn 169 Cal. App. 4th at 527. Summary judgment is therefore DENIED on this issue.

### B.  Statements Made by Ritchey

Plaintiffs concede that Defendants have submitted evidence sufficient to raise a genuine issue for trial with regards to three out of four alleged statements made by Ritchey. However, Plaintiffs argue that Defendant has not denied that she told Roman that his children were not allowed to play outside, that he needed to take them to a park if he wanted them to play outside, and that, if he didn't comply, then his family would be evicted. (Reply at 13.) Such statements, they argue, are in violation of 42 U.S.C. 3604(c). The Court finds, however, that Defendants have designated specific facts sufficient to show that there is an issue of triable fact as to this statement as well. As noted above in Section II(C), supra, during her deposition, Ritchey specifically denied speaking to Roman on the occasion in question, denied giving "any kind of notice" to Roman or Acosta regarding their children playing outside, and stated that her only conversation with Acosta arising from the incident in question had been about the fact that Ritchey had spoken with Acosta's daughter. The Court finds that this denial, made during a deposition, is sufficiently specific to create a triable issue of fact and DENIES Plaintiffs' motion for summary judgment on this issue.

### C.  Failure to Post Fair Housing Poster

Plaintiffs argue that Defendants' failure to display a fair housing poster at the Casa Buena and Casa Lynnda apartment buildings violated 24 C.F.R. §§ 110.10(a) and 110.30. 24 C.F.R. § 110.30 provides that the failure to display a fair housing poster in compliance with § 110.10(a) "shall be deemed prima facie evidence of a discriminatory housing practice." Defendants concede that they did not display a fair housing poster in the Complex while tenants maintained residency there. (Opp. at 22.) While Defendants argue that they have since posted a fair housing poster on the Complex in compliance with the regulations, the Court finds that it is undisputed that that they were in violation of 24 C.F.R. §§ 110.10(a) and 110.30 while Plaintiffs were tenants in the Complex. See Blackington, 2013 WL 1701883, at *6 (failure to post fair housing poster violated 24 C.F.R. § 110.30); Na'im v. Sophie's Arms Fine Residence, Case No. 13-cv-2515-JAH (BLM) * 15 (S.D. Ca. Jan. 8, 2016) (same). The Court therefore GRANTS Plaintiffs' motion for summary judgment with respect to Defendants' violation of 24 C.F.R. §§ 110.10(a) and 110.30.

### D.  Damages

Injury is presumed where a defendant has violated a civil rights statute. Silver Sage Partners, Ltc. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir.2001). However, while the Court grants summary judgment that the Adult Supervision Rule violated the Fair Housing Ace and the California Fair Employment and Housing Act and that Defendants' failure to display a fair housing poster violated 24 C.F.R. §§ 110.10(a) and 110.30, the Court does not decide whether Plaintiffs suffered injury sufficient to warrant the award of anything more than nominal damages for these claims. That question of fact is not before the Court and must ultimately be

proven at trial. See <u>Iniestra</u>, 886 F. Supp. 2d at 1167 (granting summary judgment as to Fair Housing Act claims but reserving determination of damages for trial); <u>Blomgren v. Ogle</u>, 850 F.Supp. 1427, 1440–41 (E.D.Wash.1993) (same). Nor does the Court reach the question of whether there was a causal connection between the conduct as to which the Court grants summary judgment and other damages claimed by Plaintiffs, such as eviction from their apartments at the Complex.

## V.     CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment in part and DENIES it in part. Summary Judgment is GRANTED as to Plaintiffs' following claims: (1) that the Adult Supervision Rule violated 42 U.S.C. §§3604(b) and (c); (2) that the Adult Supervision Rule violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955(a) and (c); and (3) that Defendants' failure to display a fair housing poster at the Casa Buena and Casa Lynnda apartment buildings violated 24 C.F.R. §§ 110.10(a) and 110.30. Summary Judgment is DENIED as to all other claims.

**IT IS SO ORDERED.**