| | | | |
|---|---|---|---|
| Case No. | EDCV 17-2066 JGB (SPx) | Date | July 9, 2019 |
| Title | *William Roman, et al. v. MSL Capital, LLC, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

MAYNOR GALVEZ
Deputy Clerk

Not Reported
Court Reporter

Attorney(s) Present for Plaintiff(s):
None Present

Attorney(s) Present for Defendant(s):
None Present

**Proceedings:** Order (1) DENYING Plaintiffs' Motion for New Trial (Dkt. No. 126); (2) DENYING Plaintiffs' Motion for Permanent Injunction (Dkt. No. 130); (3) DENYING Plaintiffs' Motion for Fees and Costs (Dkt. No. 131); and (4) DENYING Defendants' Motion for Attorneys' Fees and Costs (Dkt. No. 132) (IN CHAMBERS)

Before the Court are four post-trial motions: (1) Plaintiffs William Roman, Desiree Acosta, Diego Sandoval, Renee Sandoval, Catherine Michelle Perez, and their respective minor children's ("Plaintiffs") motion for a new trial ("Motion for New Trial," Dkt. No. 126); (2) Plaintiffs' motion for issuance of a permanent injunction ("Motion for Permanent Injunction," Dkt. No. 130); (3) Plaintiffs' motion for attorneys' fees and costs ("Plaintiffs' Motion for Fees and Costs," Dkt. No. 131); and (4) Defendants MSL Capital Li Ritchey's motion for attorneys' fees and costs ("Defendants' Motion for Fees and Costs," Dkt. No. 132). The Court held a hearing on this matter on July 1, 2019. After considering the parties' arguments and submissions in support of, and in opposition to, these motions, the Court DENIES each of them.

## I. BACKGROUND

On October 7, 2017, Plaintiffs filed a complaint against defendants MSL Capital, LLC and Li Ritchey. ("Complaint," Dkt. No. 1.) The Complaint alleged five causes of action: (1) discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq. ("FHA"); (2) discriminatory housing practices under the California Fair Employment and Housing Act, California Government Code §§ 12927 and 12955, et seq.; (3) discrimination on the

basis of familial status in violation of the California Unruh Civil Rights Act; (4) unfair business practices under the California Business & Professions Code § 17204; and (5) negligence.

On October 2, 2018, Plaintiffs filed a motion for summary judgment. (Dkt. No. 34.) On November 5, 2018, the Court issued an order granting Plaintiffs' motion in part and denying it in part. ("MSJ Order," Dkt. No. 57.) The Court granted Plaintiffs summary judgment as to the following claims: (1) that the Adult Supervision Rule which appeared in certain lease agreements at the Casa Buena and Casa Lynnda apartment buildings violated 42 U.S.C. §§ 3604(b) and (c); (2) that the Adult Supervision Rule violated the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12955(a) and (c); and (3) that Defendants' failure to display a fair housing poster at the Casa Buena and Casa Lynnda apartment buildings violated 24 C.F.R. §§ 110.10(a) and 110.30. (Id.) The Court denied Plaintiffs' motion for summary judgment as to all other claims. (Id.)

A jury trial on Plaintiffs' remaining claims began on April 2, 2019. (Dkt. No. 108.) On April 5, 2019, the Jury returned a verdict for Defendants on the remaining claims. Specifically, the jury answered "No" to the questions "Did PLAINTIFFS prove that DEFENDANTS violated the Fair Housing Act?," "Did PLAINTIFFS prove that DEFENDANTS violated California's Fair Employment and Housing Act ("FEHA")"; and "Did PLAINTIFFS prove that DEFENDANTS violated the Unruh Civil Rights Act." ("Verdict Form," Dkt. No. 118.) The jury awarded no damages to Plaintiffs.

On May 10, 2019, the Court entered judgment consistent with its summary judgment order and the jury's verdict. ("Judgment," Dkt. No. 125.) The Court awarded Plaintiffs nominal damages in the following amounts: $1.00 for Defendants' violation of 42 U.S.C. §§ 3604(b) and (c); $1.00 for Defendants' violation of the California Fair Employment and Housing Act; $1.00 for Defendants' failure to display a fair housing poster at the Casa Buena apartments; and $1.00 for Defendants' failure to display a fair housing poster at the Casa Lynnda apartments. (Id.)

## II.  PLAINTIFFS' MOTION FOR NEW TRIAL

Plaintiffs filed their Motion for a New Trial on May 15, 2019. (Dkt. No. 126.) They submitted no exhibits in support of their motion. (Id.) Defendants opposed this Motion on May 22, 2019. (Dkt. No. 127.) In support of their opposition, Defendants submitted excerpts of the trial transcript, (Dkt. Nos. 127-1 – 127-4); portions of the jury instructions, (Dkt. No. 127-5); and documentation of Defendants' counsel's attempts to contact Plaintiffs' counsel, (Dkt. No. 127-6). Plaintiffs replied on June 10, 2019. (Dkt. No. 141.)

**A.  Legal Standard**

Rule 59 authorizes new trials "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The court may grant a new trial, even if the verdict is supported by substantial evidence, if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent . . . a

miscarriage of justice." United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999). Courts may also grant a new trial where the amount of damages is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." Del Monte Dunes v. City of Monterey, 95 F.3d 1422, 1435 (9th Cir. 1996). "Regarding a Rule 59 motion, the district court can weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd., 762 F.3d 829, 841 (9th Cir. 2014).

**B. Discussion**

Plaintiffs seek a new trial on the basis of a scant six pages of largely conclusory briefing which is unsupported by any evidence or citation to the trial record. (Motion for New Trial.) Plaintiffs' motion contains two principal arguments: first, that the verdict rendered by the jury is contrary to the clear weight of the evidence and, second, that because Ritchey admitted at trial to inserting the adult supervision rule into Plaintiffs' lease agreements, she necessarily violated the Unruh Civil Rights Act. Plaintiffs' plainly inadequate and largely baseless motion will be denied in full.

**1. The verdict was not contrary to the clear weight of the evidence**

In support of the argument that the jury verdict was contrary to the clear weight of the evidence, Plaintiffs' counsel has submitted an impressionistic and free-associative ramble through his general recollections of the events of the trial. First, Plaintiffs attack the testimony of nonparty witnesses whom they called at trial, Sarah Krousey and Alejandra Zamora. Plaintiffs have not provided sufficient basis for the Court to find that these witnesses were not credible and, even if the Court did make such a finding, Plaintiffs present no argument as to why such a finding would establish that the jury's verdict was contrary to the clear weight of the evidence.

Next, Plaintiffs point to the testimony of three witnesses, who they claim provided uncontradicted evidence that Defendants violated the FHA and FEHA. First, minor Plaintiff A.G.'s testimony that Ritchey "ordered her to stop playing and to go back into her apartment on five separate occasions." (Mot. at 4-5.) Second, William Roman's testimony that Ritchey ordered his children to go inside even when he was outside supervising them. (Id. at 5.) Third, the testimony of Alyssa Xolo, a former tenant, who testified that Ritchey ordered her to supervise her son who was playing while she was making dinner. (Id.) This characterization of the evidence, in addition to being unsupported by citation to the record, also ignores significant problems with these witnesses' testimony which may have led the jury to find it not credible. Roman, for example, admitted during cross-examination that he did not remember the exact order that Ritchey had given his children and, whatever the exact order was, he did not feel compelled at the time to direct his children to go inside. ("Declaration of Sarah V. Vega," Exh. B, Dkt. No. 172-2 at 10.) Similarly, on cross examination Xolo conceded that Ritchey had never told Xolo's son that he couldn't play outside. (Vega Decl. Exh. C at 18.) Plaintiffs also offer no argument as to why Ritchey ordering A.G. to go back into her apartment, without more, could establish any of the claims before the jury.

Plaintiffs then argue that liability was established by the fact that Plaintiffs' tenancies were "all" terminated after each "objected to Defendants' discriminatory actions." (Mot. at 5.) Of course, the mere fact that Plaintiffs' tenancy was terminated after disputes with Ritchey is insufficient to establish liability. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (rejecting argument that retaliation was motivated by prior events simply because it succeeded them in time as an example of "the logical fallacy of *post hoc, ergo propter hoc,* literally, 'after this, therefore because of this'"). This argument also ignores the credible alternative explanation offered by Defendants for the termination of Plaintiffs' leases: that Ritchey wanted to raise the rent on these apartments to market rate. (Vega Decl. Exh. A at 6.)

In sum, the Court is not persuaded that the jury verdict was contrary to the clear weight of the evidence.

### 2. Plaintiffs did not establish violations of the Unruh Act

The Court previously granted summary judgment to Plaintiffs' on their claim that the Adult Supervision Rule which appeared in their leases violated 42 U.S.C. §§3604(b) and (c) and the FEHA. (MSJ Order.) The Court denied Plaintiffs' motion for summary judgment on their claim that the Adult Supervision Rule also violated the Unruh Civil Rights Act. The Court noted that the Unruh Act requires proof that the alleged discrimination was intentional, and that it remained disputed whether the inclusion of this Adult Supervision Rule in the lease was in fact intentional. Plaintiffs now argue that, because Ritchey admitted at trial to intentionally inserting the Adult Supervision Rule into Plaintiffs' leases, then the jury should have found that Defendants' additionally violated the Unruh Civil Rights Act.

The Court is not persuaded by this argument. First, while the Court is satisfied that Ritchey intended to include the Adult Supervision Rule in Plaintiffs' leases, the Court is not satisfied that this is sufficient as a matter of law to establish intentional discrimination under the Unruh Act. As discussed in the MSJ Order, violations of the Fair Housing Act, 42 U.S.C. §§ 3604(b) and (c), may be found based solely on the existence of "facially discriminatory rules which treat children, and thus, families with children, differently and less favorably than adults-only households." Iniestra v. Cliff Warren Investments, Inc., 886 F. Supp. 2d 1161, 1166 (C.D. Cal. 2012) (quoting U.S. v. Plaza Mobile Estates, 273 F.Supp.2d 1084, 1091 (C.D. Cal. 2003)). Because the Adult Supervision Rule itself facially burdened families with children more than families without children, the Court found that violations of the Fair Housing Act had been established regardless of Ritchey's intent and regardless of whether the rule was ever enforced.

At trial, the only new evidence in support of Plaintiffs' Unruh Act claim was that Ritchey knowingly included the Adult Supervision Rule in Plaintiffs' leases. Based on the verdict, the jury was not persuaded that Plaintiffs established that this rule was ever enforced and, as discussed above, the Court finds that this determination was not against the weight of the evidence. In light of Ritchey's testimony and prior declarations that the inclusion of the Rule was motivated by concern for children's safety, the Court is not convinced that the mere fact that she intentionally included of the Adult Supervision Rule constituted intentional discrimination under

the Unruh Act, even if the act of including the provision was intentional. The Court therefore finds no basis to grant a new trial.[1]

For the above reasons, Plaintiffs' Motion for a New Trial is DENIED.

### III.  PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION

Plaintiffs filed their Motion for a Permanent Injunction on May 24, 2019. (Dkt. No. 130.) Defendants opposed on June 3, 2019. (Dkt. No. 135.) In support of their opposition, Defendants submitted excerpts of the trial transcript. (Dkt. Nos. 135-1 – 135-4.) Plaintiffs replied on June 10, 2019. (Dkt. No. 140.)

**A.  Legal Standard**

Under the Fair Housing Act, a court which finds that a discriminatory housing practice "has occurred or is about to occur" may grant "any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C. § 2613(c)(1). "A permanent injunction is an extraordinary remedy that may only be awarded upon a clear showing that the moving party is entitled to such relief." Server Tech., Inc. v. Am. Power Conversion Corp., 2017 WL 2181101, at *3 (D. Nev. May 12, 2017) (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam)); see also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010). The party seeking a permanent injunction must demonstrate: (1) it has suffered irreparable harm; (2) monetary damages are inadequate; (3) the balance of hardships is in the moving party's favor; and (4) the public interest would not be disserved by a permanent injunction. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." eBay, 547 U.S. at 391.

**B.  Discussion**

Plaintiffs seek a permanent injunction to "prevent future violations of the fair housing laws by Defendants." (Motion for Permanent Injunction at 3.) Plaintiffs have not filed a proposed order and do little to specify what form this relief should take, but it appears that they seek an order "enjoining Defendants MSL Capital, LLC and Li Ritchey from engaging in discriminatory housing practices and ordering such affirmative action as may be appropriate." (Notice of Motion for Permanent Injunction, Dkt. No. 130.) Plaintiffs are also largely silent

---

[1] Even if Plaintiffs were correct that the mere intentional inclusion of the Adult Supervision Rule was sufficient as a matter of law to establish an Unruh Act violation, Plaintiffs never presented this theory of liability to the jury, never moved to include this issue in the special verdict form, and did not request that an instruction on this question be given to the jury. While Defendants acknowledge their technical violations of the FHA in their opening statement, Plaintiffs did not, and scarcely discussed it at any point in the trial.

about the scope of the "affirmative action" they seek, though in the final sentences of their brief they allude to a requirement that Defendants "be trained in and to obey the fair housing laws." (Mot. at 3.) Plaintiffs' motion will be DENIED.

First, and most importantly, this motion is untimely, as it was filed after the entry of final judgment and unaccompanied by either a motion to alter or amend judgment, under Federal Rule of Civil Procedure 59(e), or a motion for relief from judgment under Federal Rule of Procedure 60. Plaintiffs also waived this issue by failing to mention their intention to seek injunctive relief in their objection to Defendants' proposed judgment. (Dkt. No. 123.) Plaintiffs' allowed over six months to pass after prevailing on the claims for which they now seek an injunctive relieve before seeking an injunction. Given that Plaintiffs' motion was filed concurrently with their motion for attorneys' fees, it appears that this is little more than a 25th-hour attempt to secure attorneys' fees.

But even if the motion had been timely filed, Plaintiffs have not shown that injunctive relief is warranted. While Plaintiffs have not clarified the scope of the injunction they seek, it appears that what they seek is effectively a blanket order enjoining Defendants from breaking the law, in addition to some sort of mandatory training for Ritchey. "Obey the law" injunctions such as this are disfavored, as they are not narrowly tailored and are at odds Federal Rule of Civil Procedure 65(d), which requires that orders granting injunctive relief be "specific in terms" and "describe in reasonable detail…the act or acts sought to be restrained." See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007). Plaintiffs provide essentially no argument in support of the unusual equitable remedy of compelling Ritchey to undergo mandatory training.

Nor does it appear that whatever injunctive relief Plaintiffs seek is necessary. The only violations of the FHA or FEHA on which Plaintiffs have prevailed are based on Defendants' inclusion of the Adult Supervision Rule in the lease and their failure to post a fair housing poster in compliance with 24 C.F.R. §§ 110.10(a) and 110.30. At trial, Ritchey presented credible and undisputed testimony that the Adult Supervision Rule was removed from tenants' leases on February 1, 2017 – over eight months before the Complaint in this matter was filed – and that notices were posted informing tenants that the rule was no longer in effect. (Declaration of Sarah V. Vega, Dkt. No. 135-3 Exh. C at 3.) Ritchey also testified that she hung a Fair Housing Act poster in 2017, as soon as she realized that this was required by federal law. (Id. at 4.) Plaintiffs have presented no evidence or persuasive argument that these violations are likely to recur, that there are any ongoing violations of the FHA or FEHA, or that an injunction is necessary to prevent future discrimination.

In light of the fact that Defendants' violations of the FHA and FEHA were de minimis, warranted only nominal damages, and were voluntarily discontinued over two years ago, the Court finds that injunctive relief is not warranted. Because Defendants' violated a civil rights statute, the Court presumes that irreparable injury occurred in the past, even where that violation was de minimis. Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 827 (9th Cir. 2001). However, as a general rule, "past wrongs are not enough for the grant of an injunction," which will issue "only if the wrongs are ongoing or likely to recur." F.T.C. v. Evans

Prod. Co., 775 F.2d 1084, 1087 (9th Cir. 1985). The Court sees no such likelihood, and so Plaintiffs' Motion for Permanent Injunction is DENIED.

## IV. ATTORNEYS' FEES AND COSTS

Both parties seek the award of attorneys' fees and costs arising from this litigation.

On May 24, 2019, Plaintiffs filed a motion seeking the award of attorneys' fees and costs arising from all litigation through the Court's ruling on their motion for partial summary judgment. (Dkt. No. 131.) In support of their motion they submitted the following exhibits:

- Declaration of Stuart E. Fagan and accompanying exhibits (Dkt. No. 131-4);
- Declaration of Christopher Brancart (Dkt. No. 131-5);
- Declaration of Craig P. Fagan (Dkt. No. 131-6);
- Declaration of Marilyn Borelli (Dkt. No. 131-7).

Defendants opposed Plaintiffs' Motion for Fees and Costs on June 3, 2019. (Dkt. No. 136.) In support of their opposition, Defendants submitted the Declaration of Sarah V. Vega and accompanying exhibits. (Id.) Plaintiffs replied on June 10, 2019. (Dkt. No. 139.)

On May 28, 2019, Defendants filed a motion seeking to be declared prevailing parties and for an award of attorneys' fees and costs. (Dkt. No. 132.) In support of their motion they submitted the declaration of Sarah V. Vega, the declaration of Rachel A. Mihai, and accompanying exhibits. (Dkt. No. 132.) Plaintiffs opposed Defendants' Motion for Fees and Costs on June 10, 2019. (Dkt. No. 138.) In support of their opposition, Plaintiffs submitted the declaration of Stuart E. Fagan. (Dkt. No. 138-1.) Defendants replied on June 17, 2019. (Dkt. No. 144.)

### A. Legal Standard

The Supreme Court has repeatedly affirmed the "American Rule" that "each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). The Unruh Civil Rights Act permits a prevailing plaintiff, but not a prevailing defendant, to recover attorneys' fees. See Cal. Civ. Code § 52(a); Uribe v. Sherman Way Gardens, LTD., 2009 WL 10673058, at *3 (C.D. Cal. May 12, 2009). Under the FHA, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees and costs." 42 U.S.C. § 3613(c)(2). Under the FEHA, "the court may, in its discretion, award the prevailing party … reasonable attorney's fees and costs, including expert witness fees, against any party other than the state." Cal. Gov't Code § 12989.2.

Though the FHA's fee-shifting provision does not distinguish between prevailing plaintiffs and prevailing defendants, courts award attorneys' fees to defendants only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421 (1978); see also Gomez v. 7253 Variel Ave, 2017 WL 2174399, at *1 (C.D. Cal. May 17, 2017). California courts apply the same principle in determining whether to award attorneys' fees under

the FEHA, awarding them to a prevailing defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." A.H.D.C. v. City of Fresno, 2002 WL 34575401, at *11 (E.D. Cal. Oct. 17, 2002), aff'd sub nom. Affordable Hous. Dev. Corp. v. City of Fresno, 433 F.3d 1182 (9th Cir. 2006); see also Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, 91 Cal. App. 4th 859, 874 (2001) (discussing application of Christianburg to FEHA claims).

"In the Ninth Circuit, the customary method of determining the permissible amount of attorneys' fees under § 1988 is the 'lodestar' method." Ballen v. City of Redmond, 466 F.3d 736, 746 (9th Cir. 2006).[2] Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Ballen, 466 F.3d at 746 (internal quotation marks omitted); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The product of this computation—the "lodestar figure"—is a "presumptively reasonable" fee under 42 U.S.C. § 1988. See Ballen, 466 F.3d at 746. "The district court may then adjust [the lodestar] upward or downward based on a variety of factors." Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008). These factors include

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Ballen, 466 F.3d at 746.

### B. Discussion

#### 1. Plaintiffs' Motion for Attorneys' Fees

Plaintiffs seek the award of attorneys' fees and costs arising from all litigation prior to the Courts' ruling on their motion for summary judgment. (Plaintiffs' Motion for Fees and Costs.) Plaintiffs argue that their partial victory at the summary judgment stage merits the partial award of fees and costs, even though they did not prevail on any of their remaining claims at trial. (Id. at 2.) While the Court agrees that the award of nominal damages means that Plaintiffs are the prevailing party in this matter, their technical victory is so minimal that the award of attorneys' fees and costs is not warranted.

---

[2] Courts treat motions for attorneys' fees under the FHA, FEHA, and § 1988 largely identically. A.H.D.C., 2002 WL 34575401, at *11.

While a plaintiff who receives a nominal damages award is a prevailing party for the purposes of claims under the FHA and FEHA, that "does not…mean that such a plaintiff is necessarily entitled to an award of fees." Benton v. Oregon Student Assistance Comm'n, 421 F.3d 901, 904 (9th Cir. 2005) (citing Farrar v. Hobby, 506 U.S. 103, 112 (1992)). In order to award fees after issuing a judgment for only nominal damages, the lawsuit must have "achieved other tangible results" beyond those nominal damages. Id. Such other results may include "sparking a change in policy," "establishing a finding of fact with potential collateral estoppel effects," or determining a significant legal issue. Wilcox v. City of Reno, 42 F.3d 550, 554–55 (9th Cir. 1994). The determination of whether to award attorneys' fees in this circumstance is in the discretion of the district court, which "is in the best position to ascribe a reasonable value to the lawyering it has witnessed and the results that lawyering has achieved." Wilcox, 42 F.3d at 555.

The Court finds that Plaintiffs have not achieved tangible results beyond nominal damages which warrant the award of attorneys' fees. Courts typically look to three factors in determining whether attorneys' fees are warranted in cases where only nominal damages have been granted: "(a) the difference between the amount recovered and the damages sought; (b) the significance of the legal issue on which the plaintiff has prevailed; and (c) whether the plaintiff accomplished some public goal." Dowd v. City of Los Angeles, 28 F. Supp. 3d 1019, 1034 (C.D. Cal. 2014). None of those weigh in favor of granting Plaintiffs' motion.

The first two factors clearly weigh against Plaintiffs. Plaintiffs sought approximately $265,500 and received only $4.00. The legal issues on which they prevailed were technical, per se violations of the FHA and FEHA based on the failure to display a poster and a lease provision, drafted by a new landlord, which Plaintiffs never proved was enforced and which Ritchey credibly testified was included because of her concern for child safety. In light of the much broader scope of discrimination alleged in the Complaint, which Plaintiffs' ultimately failed to prove at trial, the legal issues on which Plaintiffs prevailed are largely insignificant.

Nor is the Court persuaded that Plaintiffs advanced a public goal through this litigation. Plaintiffs' point to two facts in support of their argument that their lawsuit "change[ed] the landscape" at the Casa Buena / Casa Lynnda housing complex: that Defendants "are now required to display a fair housing poster" and that Defendants "can no longer get away with forcing children to be supervised…" (Plaintiffs' Motion for Fees and Costs at 3.) But at trial Ritchey gave credible, and uncontroverted, testimony that Defendants voluntarily remedied their technical violations of the FHA and FEHA years ago: Ritchey removed the Adult Supervision Rule from tenants' leases in February 2017, eight months before Plaintiffs filed their complaint, (Vega Decl., Dkt. No. 135-3 Exh. C at 3) and posted fair housing posters in each of the Casa Buena and Casa Lynnda buildings in in 2017, as soon as she became aware that she was required by law to display such posters, (Vega Decl. Exh. C, Dkt. No. 135-3 at 5). Plaintiffs then failed to prove at trial that the Adult Supervision Rule had ever been enforced. Plaintiffs' attempt to recast this litigation as a public-minded crusade is also somewhat unpersuasive given that, even after prevailing at summary judgment, Plaintiffs only sought injunctive relief on these claims six

months later in a conclusory, three-page-long motion filed the same day as their motion for attorneys' fees.

At best, the filing of the Complaint in this matter put Defendants on notice of the requirement that they display a fair housing poster, which they immediately did. Beyond that, however, the subsequent 20 months of litigation accomplished little beyond the award of nominal damages. This is not enough to warrant attorneys' fees, and to find otherwise would effectively vitiate the general rule against granting attorneys' fees to plaintiffs who have won only nominal damages, since some underlying violation of the FHA and FEHA will always be present in cases where nominal damages are awarded. See Benton, 421 F.3d at 908. Indeed, in Benton the Ninth Circuit overturned an award of attorneys' fees to plaintiffs who had secured only nominal damages for violations of their constitutional rights where the defendant had voluntarily changed his behavior to comply with the requirements of the constitution well prior to the district court's finding of a Constitutional violation. Benton, 421 F.3d at 907–08. Here, the fact that Plaintiffs were the prevailing party "say[s] little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." Cummings v. Connell, 402 F.3d 936, 946 (9th Cir. 2005), amended, 2005 WL 1154321 (9th Cir. May 17, 2005).

Plaintiffs' Motion for Fees and Costs is DENIED. Because the Court determines that Plaintiffs are not entitled to fees, the Court need not calculate the lodestar amount or determine whether Plaintiffs' request fees are reasonable. Benton, 421 F.3d at 905.

### 2. Defendants' Motion for Attorneys' Fees

Defendants have also filed a motion for attorneys' fees and costs. (Dkt. No. 132.) Their motion fails because they have not shown that they are the prevailing party. Plaintiffs prevailed on their claims arising from Defendants' failure to display a fair housing poster and inclusion of the Adult Supervision Rule in certain leases, for which they were awarded nominal damages. (Judgment at 2.) It is black-letter law that "a plaintiff who wins nominal damages is a prevailing party under § 1988." Farrar, 506 U.S. at 112. A judgment for damages "in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." Id. at 113. While this does not necessarily mean that the prevailing plaintiff is entitled to fees, Benton 421 F.3d at 904, the Court is aware of no case in which a defendant has prevailed on a motion for attorneys' fees and costs where the plaintiff was found to be the prevailing party. This is because the rule that Defendants may recover attorneys' fees under §1988 for "unreasonable, frivolous, meritless, or vexatious" only applies to prevailing defendants. Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994). Defendants did not prevail, so they are not entitled to attorneys' fee or costs. While Defendants appear to argue that they may be declared prevailing parties only on the claims on which Plaintiff did not prevail at trial, they cite no precedent for this novel approach, which would discourage civil rights plaintiffs from bringing all but the most narrowly crafted claims. See Christiansburg Garment Co., 434 U.S. at 421 (discouraging courts engaging in post hoc reasoning in determining whether a plaintiff's claims were unreasonable, since "litigation is rarely predictable.").

Even if such a piecemeal approach were appropriate, Defendants also have not established that Plaintiffs' decision to proceed with litigation after summary judgment was unreasonable, frivolous, meritless, or vexatious. Defendants argue that Plaintiffs' allegations based on verbal statements by Ritchey were "completely unsubstantiated," and cite several portions of the trial transcript in which several witnesses admitted, under cross-examination, that Ritchey never directly told them that their children could not play outside. (Defendants' Motion for Fees and Costs at 8-9.) In sum, Defendants argue, the jury did not find the testimony presented by Plaintiffs to be credible "because each and every issue was disputed by Defendants through impeachment evidence." (Reply at 3.) But to determine that an action was meritless solely because witnesses were not credible or impeached during their trial testimony would require precisely the sort of post hoc reasoning which the Supreme Court has cautioned courts to avoid. <u>Christiansburg Garment Co</u>, 434 U.S. at 412. "This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." <u>Id.</u>

Defendants' motion is DENIED. [3]

### C. CONCLUSION

For the above reasons, the Court DENIES Plaintiffs' Motion for New Trial, DENIES Plaintiffs' Motion for Permanent Injunction, DENIES Plaintiffs' Motion for Fees and Costs, and DENIES Defendants' Motion for Fees and Costs.

**IT IS SO ORDERED.**

---

[3] In their opposition, Plaintiffs also request attorneys' fees in the amount of $5,670 for having to defend against Defendants' motion. The Court does not believe this is warranted and DENIES Plaintiffs' request.